**In re NORTHBROOK PARTNERS LLP, Debtor.**

**Northbrook Partners LLP, Plaintiff,**

**v.**

**County of Hennepin, Defendant.**

**Bankruptcy No. 97–30231.
Adversary No. 97–3272.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Feb. 22, 2000.

Mary Johnson, Office of the Hennepin County Attorney, Minneapolis, MN, for Defendant.

Clinton E. Cutler, Minneapolis, MN, for Plaintiff.

## ORDER RE: DEFENDANT'S MOTION IN THE ALTERNATIVE FOR DISMISSAL, SUMMARY JUDGMENT, ABSTENTION, AND MORE DEFINITE STATEMENT

GREGORY F. KISHEL, Bankruptcy Judge.

This adversary proceeding came on before the Court on the Defendant's motions in the alternative for dismissal, for summary judgment, for abstention, and for a more definite statement. The Defendant ("the County") appeared by Mary Johnson, Assistant County Attorney, and Robert T. Rudy, Senior Assistant County Attorney. The Plaintiff ("the Debtor") appeared by its attorney, Clinton E. Cutler. Upon the moving and responsive documents and the arguments of counsel, the Court makes the following order.

### PARTIES

The Debtor is a limited liability partnership organized under the laws of Minnesota. It filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on January 14, 1997, and continues as a debtor in possession by operation of 11 U.S.C. § 1107. At all times material to this adversary proceeding, the Debtor owned certain real estate located in Brook-

lyn Center, Hennepin County, Minnesota, on which it operated a "strip mall" shopping center.

The County is a governmental subdivision of the State of Minnesota. It is responsible under Minnesota statute for assessing and collecting *ad valorem* taxes against the Debtor's real estate.

### SUBJECT OF THIS LITIGATION

This adversary proceeding involves a dispute over the *ad valorem* taxes assessed by the County against the Debtor's real estate over a period of six years. The Debtor acquired the real estate at some point before 1991.[1] For the purposes of ad valorem tax assessment, the real estate is divided into five parcels. The County has assigned a separate tax identification number to each parcel; for shorthand, the parties have denominated the units as "parcels 24–28," inclusive. The parcels vary in size and shape. The Debtor put each of them to a somewhat different use in the design and operation of the shopping center.

Under MINN. STAT. § 273.01, the County lists property with reference to its value for the assessment of real estate taxes as of January 2 of the subject year. Under MINN. STAT. § 278.03 subd. 1, the taxes then become due and payable in May of the following year. If a property owner disagrees with the estimated market valuation ("EMV") placed on the property for the calculation of the tax, or otherwise "claims that such property has been partially, unfairly, or unequally assessed . . .," it may file a petition for review in the state district court during the year in which the taxes are due. MINN. STAT. § 278.01 subd. 1.[2] If proceedings on the petition are not completed by the 16th of May next follow-

---

1. The record for this adversary proceeding does not establish the specific date. Testimony from proceedings in the main case indicates that the Debtor bought it in 1987 or 1988.

2. The deadline for filing petitions for review is fixed by MINN. STAT. § 278.01 subd. 1. Prior to

1994, it was set at May 16. For taxes payable in 1995 and thereafter, the deadline is March 31. 1994 Minn. Laws, ch. 587, art. 5, §§ 14 and 32. The post–1994 deadline of March 31 is subject to an exception that is not relevant here. MINN. STAT. § 278.01 subd. 4.

ing the filing, the petitioner may continue only if it pays 50 percent of the amount of the subject tax, or obtains a waiver of the payment requirement from the court in which the petition is pending. MINN. STAT. § 278.03 subd. 1. The court may grant the waiver upon a showing that the property owner is in good faith in seeking the review, that there is probable cause to believe that the property is exempt from the tax or that the tax may be determined to be less than 50 percent of the amount levied, and that payment of the levied tax would impose undue hardship on the property owner. *Id.* Failure to make the payment or to obtain the waiver "shall operate automatically to dismiss the petition," subject to reinstatement upon payment of the full amount of the tax plus penalty and interest within one year of the dismissal. *Id.*

## PRE–PETITION PROCEDURAL HISTORY

On April 30, 1992, the Debtor filed a petition for review of the taxes payable in 1992 for all five parcels, in the Hennepin County District Court. The petition as to parcel 24 was dismissed automatically for the Debtor's failure to timely meet the partial-payment requirement of the statute, or to obtain a waiver of it.[3]

On May 6, 1993, the Debtor filed a petition for review of the taxes payable in 1993, for all five parcels. This petition too was dismissed as to parcel 24, for the Debtor's failure to timely meet the partial-payment requirement.[4]

On December 3, 1993, the Debtor and the County entered into a settlement agreement that resolved the petitions still pending for parcels 25 through 28 for years 1992 and 1993. The settlement reached certain other issues as well.[5] The

agreement provided for a substantial reduction of the EMV for parcel 25 for both years, and the maintenance of the EMV for parcels 26 through 28 for those years. It then provided:

> . . .it is understood and agreed that [the Debtor] hereby waives all rights to reinstate the statutorily dismissed parcel [24].

Finally, the agreement included an accord as to the EMV for parcels 25 through 28 for taxes payable in 1994 and 1995. The Debtor was obligated to file a petition for review of the already-assessed taxes payable in 1994, to effectuate the reduction of the EMV and the taxes. For taxes payable in 1995, the stated values were to be used in the upcoming assessment of the parcels. The agreement contains no terms applying to parcel 24 other than the recital quoted above.

Pursuant to the settlement agreement, counsel for the County prepared and filed written offers to reduce the valuation of the subject parcels, pursuant to MINN. STAT. § 278.05 subd. 5 for the taxes payable in 1992, 1993, and 1994. The Debtor accepted the offers. The state court then entered judgment pursuant to the offers and acceptances on May 6, 1994, for taxes payable in 1992 and 1994, and on May 11, 1995, for taxes payable in 1993. Because of its prospective effect as to taxes payable in 1994, the settlement agreement did not require a petition for review, offer and acceptance, or judgment for taxes payable in 1995.

The Debtor did not timely file petitions for review for taxes payable in 1996; the County and the Debtor did not enter any agreement to affect the EMV or the taxes payable for that year.

By the time this motion was submitted, the Debtor had not paid the taxes payable

---

3. The date of the dismissal does not appear from the record, but it is irrelevant to the issues at bar.

4. Again, the date of the dismissal does not appear from the record.

5. The agreement was memorialized in a letter dated December 3, 1993, from Mark P. Parish, then City Assessor for the City of Brooklyn Center, to Richard I. Diamond, Esq., then counsel for the Debtor.

in 1992, 1993, 1994, or 1995 for parcel 24. In addition, of taxes payable in 1996, it had paid only those for parcel 26.

## POST–PETITION PROCEDURAL HISTORY

On March 28, 1997, after it had filed for reorganization in this Court, the Debtor filed three separate petitions in the Hennepin County District Court for review of taxes payable in 1997. The first, for parcel 24, was dismissed for failure to timely pay 50 percent of the subject tax, though the state court allowed the Debtor leave to reinstate the petition upon payment of some portion or all of the taxes by May, 1998. The other two petitions (the first for parcel 27, and the second for parcels 25, 26, and 28) were still pending when the motion at bar was submitted.

Meanwhile, on September 8, October 14, and November 7, 1997, the County filed a first proof of claim in the Debtor's Chapter 11 case, and two successive amendments to it. In the last one, the face amount of the claim is $637,215.17.

## NATURE OF THIS ADVERSARY PROCEEDING

On October 9, 1997, the Debtor filed the complaint in this adversary proceeding.

After reciting a truncated version of the procedural history as the factual basis for its complaint, the Debtor set forth two separate requests for relief. As the legal basis for its first count, the Debtor invoked 11 U.S.C. § 505(a)(1).[6] In sum, as pleaded,

> [the Debtor] requests an order of this court determining the amount of any tax or any fine or penalty relating to any tax assessed against [its] Real Property, for the years 1992 through 1997.

Via its second claim for relief, the Debtor objected to the County's filed claim. Styling this count under 11 U.S.C. § 502(b)(1),[7] the Debtor essentially sought a redetermination of the EMV the County attached to the various parcels for the taxes payable in the years in question, and a resultant recalculation of the amount of the County's claim for the purposes of allowance and treatment in its Chapter 11 case. Though the statutory citations are different, the Debtor seeks the same relief through both counts.[8]

## MOTION AT BAR

The County did not file an answer to the Debtor's complaint; rather, it filed the present motion.[9] The County's main goal

---

6. This statute provides:
 Except as provided in [11 U.S.C. § 505(a)(2)] ..., the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

7. This statute authorizes the Bankruptcy Court to determine and allow the amount of any claim as to which an objection is made, except to the extent that—
 (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured ...

8. The Debtor's sole basis for challenging the County's claims is the valuation to be as-

signed to its properties; it does not question the County's claim on any mathematical basis, such as the propriety of its application of rates to the valuation. Because the Debtor has never articulated a separate legal theory for proceedings under § 502(b)(1), all further discussion will treat this matter as if it had been pleaded under § 505 alone.

9. In part, anyway, it apparently was taking an election granted it under Fed. R. Civ. P. 12(b), *as incorporated by* Fed. R. Bankr. P. 7012(b):
 Every defense, in law or fact, for a claim for relief in any pleading, shall be asserted in the responsive pleading thereto ..., except that the following defenses may at the option of the pleader be made by motion: (1) Lack of jurisdiction over the subject matter,
 ...
 (6) Failure to state a claim upon which relief can be granted ...

is to eject this litigation from the federal courts, under alternative theories:

1. The Tax Injunction Act, 28 U.S.C. § 1341, deprives the federal courts of subject matter jurisdiction over the issues pleaded by the Debtor.

2. The doctrine of issue preclusion (or collateral estoppel) bars the Debtor from relitigating any issue going to the amount of the County's claim for taxes payable in 1992 through 1995, given the parties' entry into the December 3, 1993 settlement agreement and the entry of the three judgments based on it. Thus, as the County would have it, it is entitled to summary judgment on the Debtor's complaint, as it pertains to that portion of its filed claim.

3. Under longstanding Supreme Court case precedent, this Court should abstain pursuant to 28 U.S.C. § 1334(c)(1)—(2) from hearing and determining the Debtor's requests for relief, as to all of the parcels and all of the tax claims at issue.

As an alternative to the ejection of all or part of the issues under those theories, the County seeks an order compelling the Debtor to replead via a more definite statement pursuant to FED. R. CIV. P. 12(e), *as incorporated by* FED. R. BANKR. P. 7012(b).[10]

## DISCUSSION

### Introduction

At base, the Debtor is invoking more generalized remedies created under bankruptcy law, to counter the results of specific remedies given the County as a taxing authority under state law. The Debtor's theory of suit is rather broad-brushed. It is founded on an unspoken assumption that the County is to be treated as any other creditor for the application of § 502(b)(1), and as any other taxing authority for the application of § 507(a)(1). As the Debtor would have it, this should be done despite the rather involved details of the history between the parties. Ultimately, the argument is entirely too perfunctory; it ignores both the finer points of the parties' past dealings and relationships, and the more wide-ranging aspects of the balance of powers between local governments and the national government in our federal system.

### Application

When it comes to applying the several theories that the County has advanced for dismissal, the discussion must be split up. This is necessary because of the span of years, the multiplicity of tax parcels, and the variant treatment that the parcels received under the parties' dealings over those several years. As it turns out, all of the County's individual arguments for dismissal or summary judgment apply to at least one parcel for every year. Thus, the County's motion must be granted.

*1. Parcels 25–28, Taxes Payable in Years 1992 to 1995.*

The County's request for dismissal is most simple and straightforward as to parcels 25 through 28, for the taxes payable in years 1992 to 1995.

The facially-broad authority under § 505(a)(1), to "determine the amount or legality of any tax," is subject to a crucial limitation: the issues must have been fresh as of the commencement of the bankruptcy case, and not settled by a prepetition adjudication in another forum with jurisdiction. 11 U.S.C. § 505(a)(2)(A).[11]

---

A motion making any of these defenses shall be made before pleading if a further pleading is permitted.

**10.** This rules provides, in pertinent part:

If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired....

**11.** The text of this statute is:

(2) The court may not so determine—

This statute incorporates the concept of *res judicata* (also known as claim preclusion) under commonlaw jurisprudence. *In re Teal*, 16 F.3d 619, 621 n. 3 (5th Cir. 1994); *In re Doerge*, 181 B.R. 358, 364 (Bankr.S.D.Ill.1995).[12]

After the Debtor filed its state-court petitions to challenge the County's valuation and assessment for taxes payable in 1992 and 1993, the parties entered into a comprehensive settlement for parcels 25 through 28, applicable to those years and to taxes payable in 1994–1995. Pursuant to the December 3, 1993 letter-agreement, the state court entered judgments in 1994 and 1995 that fixed the valuation, and hence the assessment, for all four parcels for taxes payable in 1992 through 1994. The agreement also settled the valuation for taxes payable in 1995.

■ The entry of judgment for the first three years unquestionably constitutes an "adjudication" within the meaning of § 507(a)(2)(A); the issues certainly were "contested before" the state court and a judgment (whether based on a stipulation or not) is a quintessential "adjudication." *In re Baker*, 74 F.3d 906, 910 (9th Cir. 1996); *In re Teal*, 16 F.3d at 621. In any event, the general policy in favor of settlement supports the rule that a settlement agreement between a debtor and a taxing authority equates to an "adjudication" for the purposes of § 505(a)(2)(A). *In re Cluck*, 165 B.R. 1005, 1009–1011 (W.D.Tex. 1993); *In re Blue Cactus Post, L.C.*, 229 B.R. 379, 387 (Bankr.N.D.Tex.1999); *In re Crest–Mex Corp.*, 223 B.R. 681, 683 (Bankr.S.D.Tex.1998); *In re El Tropicano,*

*Inc.*, 128 B.R. 153, 158 (Bankr.W.D.Tex. 1991).

■ Here, the Debtor had its right to contest the County's valuation and assessment as to all of the parcels before a tribunal of competent jurisdiction before its bankruptcy filing. It went on to exercise the right as to all of them for three of the subject years; it terminated that exercise with a consensual accord as to four of the five parcels for the three years and one more year; and then it got the tribunal to lend its sanction to the agreement. The Debtor had its opportunity for a "day in court" as to the parcels and years covered by the stipulation, and in the end it got an adjudication on them. Section 505(a)(2)(A) bars the Debtor from re-litigating any issue as to the valuation and assessment on parcels 25 through 28 for taxes payable in 1992 through 1995.

### 2. Parcel 24, Taxes Payable in Years 1992 and 1993.

The same rationale applies to parcel 24, for taxes payable in 1992 and 1993, though the procedural backdrop was a bit different.

■ The Debtor's state-court petitions had been dismissed as to this parcel for these years. However, the December, 1993 settlement included the corresponding tax liabilities. They were treated by the Debtor waiving its statutory right to reinstate the petitions. This was a substantive concession by the Debtor: the prior valuation and assessment for parcel 24 for those years would stand, for once and for all.[13] The term clearly was part of

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the [bankruptcy] case ...

12. Given this, there is no reason to get into that portion of the County's argument that relies on the judicial doctrine of collateral estoppel. The broader concept of *res judicata-claim* preclusion-sweeps in the adjudicative

end result, the validity and amount of the tax liability as a whole. As a result, it is not necessary to apply *issue* preclusion or to focus on the narrower factual adjudication on value.

13. This was the pre-existing result under the statute. *See Southdale Circle Partnership v. County of Hennepin*, 424 N.W.2d 536, 538 (Minn.1988) (when property owner's petition is dismissed for failure to timely pay assessed tax, "[t]he valuation cannot be changed ...").

a more global accord; the Debtor gave up its only option to challenge the tax burden on this parcel for the subject years, without corresponding consideration identified to the parcel itself, but it received significant benefits for other parcels that were subject to the agreement.

As the resolution of a dispute previously in litigation, potentially to be revived, and very much part of a larger dispute still otherwise in active contest, the stipulation's term as to parcel 24, for taxes payable in 1992 and 1993, was a settlement that is to be equated with an adjudication under § 505(a)(2)(A). The Debtor is barred from re-litigating any issue as to this valuation and assessment also.

*3. Parcel 24, Taxes Payable in Years 1992 and 1993 (Alternate Characterization), and 1994.*

In the alternative, § 505(a)(2)(A) applies to parcel 24 for years 1992–1993 through a different characterization of the outcome of the Debtor's state-court petition for those years.

■ The Minnesota Supreme Court analogized the automatic dismissal under MINN. STAT. § 278.03 subd. 1 to a default judgment, when it held that more general procedures for relief from such a dismissal were available. *Husby–Thompson Co. v. County of Freeborn,* 435 N.W.2d 814, 815 (Minn.1989) (relief from default judgment under MINN. R. CIV. P. 60.02 is available against order of dismissal under MINN. STAT. § 278.03 subd. 1, in the rare case where failure to meet requirement of timely partial payment is due to genuine mistake or misunderstanding between property owner and third party). *See also Thunderbird Motel Corp. v. County of Hennepin,* 289 Minn. 239, 183 N.W.2d 569, 570 (1971); *Bloomington Hotel Investors v. County of Hennepin,* 1990 WL 166931 at *2 (Minn.Tax1990).

■ This characterization can be stretched to fit the considerations at bar, without violence to the underlying statutory scheme. After all, the automatic dismissal restores the presumptive legal validity and enforceability of the administrative determination on the original assessment. *Southdale Circle Partnership v. County of Hennepin,* 424 N.W.2d at 538. This leaves the property owner without an avenue for judicial review. The result is a deemed resolution of specific issues of law and fact, a fixing of legal rights and duties. This is the same as happens upon entry of a default judgment against a party that fails a more generally-applicable procedural requirement, like the timely interposition of an answer or a court-ordered response to discovery. A default judgment is a final adjudication for the application of *res judicata* under Minnesota state law, *Herreid v. Deaver,* 193 Minn. 618, 259 N.W. 189, 191 (1935), as well as federal law, *Brown v. Kenron Aluminum & Glass Corp.,* 477 F.2d 526, 531 (8th Cir.1973). When its equivalent is entered after the joinder of a substantive tax issue via a taxpayer's petition and the government's actual or deemed answer, it should be given similar preclusive effect under § 505(a)(2)(A).

Thus, the finality of the valuations and assessments for parcel 24 for taxes payable in 1992 and 1993 is reinforced by the earlier dismissal of the Debtor's petitions for those years. Under the same rationale, the dismissal of the Debtor's petition as to parcel 24 for taxes payable in 1994 precludes the invocation of § 505(a)(1) for that parcel and that year.

*4. Parcels 24 through 28, Taxes Payable in Year 1997.*

After filing for Chapter 11 but before commencing this adversary proceeding, the Debtor had filed a state-court petition

---

The Debtor argues at length that the language covering parcel 24 is ambiguous, requiring judicial construction and the receipt of evidence at trial to aid that construction, but it is simply wrong. There is no other conclusion to be drawn reasonably from the provision by which the Debtor "waive[d] all rights to reinstate the statutorily dismissed parcel ..."

challenging the County's valuation and assessment as to parcels 24 through 28 for taxes payable in 1997. By the date of the hearing on the County's motion, the petition had been statutorily dismissed under MINN. STAT. § 278.03 subd. 1 as to parcel 24; it remained pending as to the other four. The Debtor does not disclose whether it intends to continue with the state-court proceeding, but in its complaint here it seeks the equivalent of the relief it seeks there: a revaluation of the properties for the taxes payable in 1997 and a recalculation of the amount of the taxes.

 The federal trial courts' authority to entertain the Debtor's challenge for this year is subject to a more general provision of the United States Judicial Code, the Tax Injunction Act of 28 U.S.C. § 1341 ("TIA").[14] The TIA was enacted to preserve one of the fundamental balances in the relationship between our national and state governments:

> The federal balance is well served when the several States define and elaborate their own laws through their own courts and administrative processes and without undue interference from the federal judiciary. The States' interest in the integrity of their own processes is of particular moment respecting questions of state taxation.

*Arkansas v. Farm Credit Serv. of Central Ark.,* 520 U.S. 821, 826, 117 S.Ct. 1776, 1780, 138 L.Ed.2d 34 (1997). The TIA "reflects a congressional concern to confine federal court intervention in state government." *Id.* at 826–827, 117 S.Ct. at 1780.

Given the systemic importance of the federal balance, and given the basic principle that statutory language is to be enforced according to its terms, federal courts must guard against interpretations of the Tax Injunction Act which might defeat its purpose and text.

*Id.* at 827, 117 S.Ct. at 1780. *See also Chase Manhattan Bank, N.A. v. City & County of San Francisco,* 121 F.3d 557, 559 (9th Cir.1997); *Aluminum Co. of America v. Dept. of Treas. of State of Michigan,* 522 F.2d 1120, 1123 (6th Cir. 1975). The statutory enactment has long-standing antecedents in the American understanding of federalism. *Arkansas Corp. Comm. v. Thompson,* 313 U.S. 132, 145, 61 S.Ct. 888, 893, 85 L.Ed. 1244 (1941) (emphasizing "our historic national policy of federal non-interference with the taxing power of states ... ").

The County maintains that the TIA bars the Bankruptcy Court from hearing any challenge to any of the assessments on the Debtor's property. The Debtor, however, disputes that the TIA even applies. As it points out, it does not request interim or permanent equitable relief as such.[15] Thus, as the Debtor would have it, its effort to lever a recalculation of the property's real estate tax burden is not proscribed by the TIA, and this Court can take cognizance of its complaint.

 The Debtor frames the status of the parties and their claims in a light entirely too restricted, however.

> [T]he [Tax Injunction] Act [is] first and foremost a vehicle "to limit drastically

---

14. In pertinent part, this statute provides:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

As a unit of the District Court, 28 U.S.C. § 151, this Court is subject to this statute. The original jurisdiction over bankruptcy cases and proceedings is vested in the District Court under 28 U.S.C. §§ 1334(a)-(b); the judges of this Court collectively receive the cases and proceedings within the District

Court's jurisdiction through the reference of 28 U.S.C. § 157(a) and Loc. R. BANKR. P. (D.MINN) 1070-1.

15. As the Debtor acknowledges, it did not have to: the automatic stay of 11 U.S.C. § 362(a) restrained the County from further action to collect the past-due taxes against the property, and the Debtor planned to seek permanent relief against further collection by using the confirmation of a plan of reorganization to interpose the discharge injunction of 11 U.S.C. §§ 524(c) and 1141(b).

federal district court jurisdiction to interfere with so important a local concern as the collection of taxes."

*Arkansas v. Farm Credit Serv.*, 520 U.S. at 826, 117 S.Ct. at 1779 (quoting *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522, 101 S.Ct. 1221, 1233–1234, 67 L.Ed.2d 464 (1981); interior quotation marks omitted). Thus, the TIA bars actions for *declaratory* relief that could interfere with the states' tax collection processes, as well as actions for outright injunctive relief. *California v. Grace Brethren Church*, 457 U.S. 393, 396, 102 S.Ct. 2498, 2501, 73 L.Ed.2d 93 (1982); *Burris v. City of Little Rock*, 941 F.2d 717, 720 (8th Cir.1991); *Coon v. Teasdale*, 567 F.2d 820, 822 (8th Cir.1977). *See also Jefferson County, Alabama v. Acker*, 527 U.S. 423, 433, 119 S.Ct. 2069, 2076, 144 L.Ed.2d 408 (1999) ("By its terms, the TIA bars *anticipatory* relief, suits to stop ('enjoin, suspend or restrain') the collection of taxes." (emphasis added)). Given the TIA's goal of promoting comity with non-federal fora and deference to the states' administration of their own systems of taxation, one cannot get too finicky in defining the scope of proceedings subject to its prohibition.

■ Whether this adversary proceeding is considered in isolation or in context, the TIA reaches it. Under § 502(b)(1) or under § 505(a), the Debtor really is seeking declaratory relief-an adjudication that the taxes chargeable against its property were not as large as the County had assessed. This alone is enough to place this matter within the TIA's ambit. Beyond that, of course, this proceeding is not free-standing; it arises in a bankruptcy reorganization case, and it is the first step in getting permanent equitable relief. In sum, the Debtor sought to supplant the state-law process as to taxes payable in 1997 by using the complex of remedies under 11 U.S.C. §§ 505(a), 502(b), 1123(b)(1),[16] 1141(a),[17] 1141(b),[18] 1141(c),[19] 1141(d),[20] and 524(a)(1)-(2).[21] Were it to succeed, the Debtor would become the beneficiary of a federal court's injunction, binding the County and prohibiting that

16. In pertinent part, this statute provides:
 . . . a [Chapter 11] plan may—
 (1) impair or leave unimpaired any class of claims, secured or unsecured . . .

17. In pertinent part, this statute provides:
 . . . the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

18. In pertinent part, this statute provides:
 Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

19. In pertinent part, this statute provides:
 Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and

interest of creditors, equity security holders, and of general partners in the debtor.

20. In pertinent part, this statute provides:
 Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—
 (A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in [11 U.S.C. § ] . . . 502(i) . . .

21. In pertinent part, this statute provides:
 A discharge in a case under this title—
 (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under [11 U.S.C. § ] 1141 . . . whether or not discharge of such debt is waived;
 (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . .

creditor from collecting *ad valorem* taxes in the amounts that had either been fixed by prior judgment or were presumptively valid under statute. The Debtor's argument that § 505(a) does not itself provide for an injunction confuses the branch with the tree, when the whole with its conjoined limbs is the proper subject. The Debtor may not seek injunctive relief as such in the proceeding at bar, but it cannot deny its ultimate goal. Whether the context is immediate or longer-term, this proceeding clearly falls under the TIA.

The question on the merits, then, is whether the TIA does prohibit this proceeding as to taxes payable in 1997. As to all of the parcels, Minnesota statute gave the Debtor a "plain" and "speedy" remedy for its contentions with the County's valuation and assessment for that year. That remedy was in process before the state courts for four out of the five parcels when the Debtor commenced this adversary proceeding; it was recoverable for the fifth, parcel 24. At least by implication, though, the Debtor maintains that the requirement of partial payment makes the remedy not "efficient," as the statute requires.

 This argument is misplaced; it rests on the construction of the TIA that the Supreme Court has discouraged for several decades. Under Minnesota law, the requirement of partial payment has a two-fold purpose: to ensure that property owners are not merely using appeals to delay the brunt of their financial responsibility, and to minimize the effect that the appeal process will have on collection, disbursement to component units of government, and those entities' fiscal stability. *State v. Elam,* 250 Minn. 274, 84 N.W.2d 227, 230 (1957); *Oak Glen Dev. Co. v. County of Washington,* 1987 WL 5146 at *1 (Minn.Tax 1987). Enforcing a prerequisite of payment on a financially-stressed

owner might even prevent it from exercising a state-law remedy, if it lacks the wherewithal, but it does not make the ongoing process "inefficient." [22] The "efficiency" that the TIA indirectly promotes is that in the process itself, measured by the relative ease of pre-trial procedures, the promptness with which a final presentation of evidence can be made, and the dispatch with which a decision can be rendered. *Burris v. City of Little Rock,* 941 F.2d at 720 ("The adequacy of the state remedy is measured according to procedural rather than substantive criteria . . ."). Thus, "efficiency" is gauged from the governing requirements of state statute and rule, and (to a lesser extent) the size and currency of the state tribunal's docket. Ultimately, this sort of "efficiency" is an *objective* quality, not specific to the situation of the taxpayer in question. *Id.* In this light, the particular taxpayer's ability to satisfy financial or other prerequisites for maintaining its contest on the merits is irrelevant.

 The construction suggested by the Debtor would open the door to just the sort of multi-fold and variegated erosion of state assessment procedures that the TIA was passed to prevent. *Aluminum Co. of America v. Dept. of Treas. of State of Mich.,* 522 F.2d at 1123–1124 (citing *Dept. of Employment v. United States,* 385 U.S. 355, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966), and legislative history to TIA). At least as applied to a dispute over *ad valorem* real estate taxes where the owner has an appeal pending in a non-federal forum, the federal courts have no business furnishing an alternative forum for the same issue under § 505(a). The TIA prohibits this Court from assuming jurisdiction over all issues as to the valuation and assessment on all of the parcels for taxes payable in 1997.[23] The County, then, is entitled to

---

**22.** *Cf. Aluminum Co. of America v. Dept. of Treas. of State of Mich.,* 522 F.2d at 1125 (" . . . failure to utilize a remedy does not render that remedy insufficient" under TIA).

**23.** The Supreme Court categorizes the TIA as a "jurisdictional rule" and a "broad jurisdictional barrier." *Arkansas v. Farm Credit Serv.,* 520 U.S. at 825–826, 117 S.Ct. at 1779–1780 (collecting prior cases). *See also, Burris v. City of Little Rock,* 941 F.2d at 720 ("The

dismissal of this aspect of the Debtor's complaint, for lack of jurisdiction in the federal trial courts.

### 5. Parcel 24, for Taxes Payable in 1995, and Parcels 24–28, for Taxes Payable in 1996.

■ The last group of issues involves tax liabilities spanning two years, for which the Debtor failed to timely file petitions in the state court. Because Minnesota law set a deadline for the Debtor's challenge to the County's assessment[24], and the deadline had passed by the commencement of this adversary proceeding, the Debtor no longer has an appeal in the state forum available to it. Under state law, it has no remedy against these assessments, which are final and binding. *Southdale Circle Partnership v. County of Hennepin*, 424 N.W.2d at 538 ("If a taxpayer does not file a petition challenging the assessment at all, the county's valuation stands ... ").

From the face of § 505(a), this set of tax liabilities is the most problematic of the lot. These liabilities have never been "contested and adjudicated"; thus, the facial bar of § 505(a)(2)(A) does not apply. Too, the prefatory language of § 505(a) allows the Bankruptcy Court to "deter-

mine the amount or legality of any tax, ... whether or not previously assessed ...." In a broad way, these provisions seem to leave this set of liabilities open to the Debtor's attack, notwithstanding the deemed finality of the assessments under state law.

However, the balance of the Debtor's argument is based on little more than an argumentative flourish: "if not here, where? and if not now, when?" The essence of Debtor's rhetorical response is, "because nowhere else, here. And because not never, now." This, however, is too spare a basis for a federal court to step in. The reason goes back to the ongoing themes of federalism.

### a. Abstention under 11 U.S.C. § 505(a).[25]

■ Any number of courts have observed that § 505(a)(1) is a permissive empowerment-as established by the operative verb "may." It is not a mandatory directive. *In re Queen*, 148 B.R. 256, 259 (S.D.W.Va.1992). The assumption of the power is discretionary with the Bankruptcy Court. *E.g., In re Marcellus Wood & Trucking, Inc.*, 158 B.R. 650, 654 (Bankr. W.D.Mich.1993); *In re Swan*, 152 B.R. 28,

[TIA] forbids federal courts from exercising jurisdiction over certain kinds of claims involving state taxation... ").

**24.** *See* pp. 108–109 *supra*.

**25.** The County framed its request for abstention under 28 U.S.C. §§ 1334(c)(1)-(2), which provide as follows:

> (c)(1) Nothing in ... section [1334] prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under [the Bankruptcy Code] or arising in or related to a case under [the Bankruptcy Code].
>
> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under [the Bankruptcy Code] but not arising under [the Bank-

> ruptcy Code] or arising in a case under [the Bankruptcy Code], with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under section [1334], the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

As will be seen, the judicially-evolved principles of abstention under § 505(a) parallel the bases for "discretionary abstention" under 28 U.S.C. § 1334(c)(1); thus, reliance on the general statute is not necessary. To equal effect, this decision's analysis under the TIA largely parallels the thought behind "mandatory abstention" under 28 U.S.C. § 1334(c)(2), at least in the case where the taxpayer has a state proceeding pending when it invokes federal jurisdiction. There, too, the availability of a more particularized rule favored using it, rather than the general one.

30 (Bankr.W.D.N.Y.1992); *In re AWB Assoc.*, 144 B.R. 270, 275–276 (Bankr.E.D.Pa. 1992); *In re El Tropicano, Inc.*, 128 B.R. 153, 161 (Bankr.W.D.Tex.1991); *In re Galvano*, 116 B.R. 367, 372 (Bankr.E.D.N.Y. 1990). Some courts have termed the discretion "broad." *In re Custom Distrib. Servs., Inc.*, 216 B.R. 136, 148 (Bankr. D.N.J.1997); *In re Penking Trust*, 196 B.R. 389, 393 (Bankr.E.D.Tenn.1996).

 Guidance for the exercise of this discretion can be found in the principles of federalism recognized in jurisprudence under the Tax Injunction Act. The application, of course, should be tempered by the substantive context: in a particular case, promoting the goals of bankruptcy relief may outweigh the state's primacy in applying and enforcing its own law. This bankruptcy-specific tempering should activate, however, only where a combination of circumstances merits it:

1. The interests of enough other constituencies are implicated in the outcome of the tax dispute, *In re Cumberland Farms, Inc.*, 175 B.R. 138, 142–143 (Bankr.D.Mass.1994), *In re Swan*, 152 B.R. at 30, *In re El Tropicano, Inc.*, 128 B.R. at 161, and *In re Galvano*, 116 B.R. at 372;

2. The decision-making process does not require substantial expertise of the sort developed in a specialized state tribunal; and

3. The use of a federal forum in the case at hand would not destabilize the state scheme for taxation, *In re Fairchild Aircraft Corp.*, 124 B.R. 488, 491 (Bankr.W.D.Tex.1991).[26]

 The courts have identified a number of factors to consider in determining whether to abstain under § 505(a):

1. The complexity of the issue under tax law;

2. The exigency of the matter;

3. The burden on the bankruptcy court's docket;

4. The length of time required to hold a trial and to render a decision;

5. The asset and debt structure of the debtor; and

6. The actual or potential prejudice to either party.

*In re Galvano*, 116 B.R. at 372. *See also In re Marcellus Wood & Trucking, Inc.*, 158 B.R. at 654; *In re Swan*, 152 B.R. at 30; *In re El Tropicano*, 128 B.R. at 161. The effect that a choice of forum would have on other creditors' rights and realizations from the bankruptcy estate is also a consideration; so is the relative weight of promoting bankruptcy's "fresh start" for debtor. *In re Queen*, 148 B.R. 256, 258 (S.D.W.Va.1992), *aff'd*, 16 F.3d 411 (4th Cir.1994).[27]

 As the factors aggregate for the parties at bar, the most good is served by declining to exercise § 505(a)'s power.

In the first place, the dispute of fact and law is not as simple as the Debtor maintains, or as accessible to a judge of this forum:

The valuation of property for purposes of determining property taxes must be consistent with state-law principles, as the valuation is merely part and parcel of the adjudication of the tax due and owing, a question controlled by state law. The valuation law with which bankruptcy courts are most familiar (that arising out of Section 506(a) ... ) does not here apply. Instead, the bankruptcy court gives full faith and credit to

---

26. The *Fairchild Aircraft Co.* court was correct in recognizing that abstention under § 505(a) is appropriate where "uniformity of assessment is of significant importance." It was *not* correct in holding that abstention is appropriate *only* then.

27. In the end, though, decision-making under the factor-based analyses much-favored by bankruptcy judges should not devolve into a mechanistic calculus; it should focus on the legislative purpose, and the relative prominence of proven factors in supporting or promoting it. *In re Stearns*, 241 B.R. 611, 625 (Bankr.D.Minn.1999).

the law of the state upon which the tax is based.

*In re Fairchild Aircraft Corp.,* 124 B.R. at 492–493. *See also, In re Building Technologies,* 167 B.R. 853, 857 (Bankr. S.D.Ohio 1994). The matrix of considerations for ascertaining "market value" under MINN. STAT. § 273.11 is not the same as that under § 506(a), or under provisions of the Bankruptcy Code that specifically define "value," like § 522(a)(2). The goals of the process are different. In the context of *ad valorem* taxation, the central goal is fairness and uniformity in tax assessment. For bankruptcy estate administration, differing substantive contexts may dictate alternative methods of valuation. *In re Bergh,* 141 B.R. 409, 419 (Bankr.D.Minn. 1992) (quoting H.R. REP. No. 595, 95th Cong. 1st Sess. 356 (1977); and S. REP. No. 989, 95th Cong., 2d Sess. 68 (1978)).

No judge on this Court has ever had to make a determination of value structured by the goals of the Minnesota state property tax system. The undertaking would require one to sensitize to an unfamiliar but complex body of law, and possibly to theories of valuation different from the general methods of appraisal that are used in a commercial context. The Minnesota Tax Court has long-term experience and substantial expertise in this very different legal world. This Court has none. Perforce, the legal dimension of the issue is complex.

Beyond that, the issue is factually involved as applied to taxes payable in 1995 and 1996, and would be more so were the inquiry to broaden. Before the Debtor's acquisition, the real estate was divided for assessment into five different parcels. Each was developed in a somewhat different way. It appears that over the full period covered by the Debtor's challenge, one parcel (number 24) did not generate enough income to pay any taxes. For any given year, the ability of the others to meet both debt service and the tax burden varied. The variant states of development, marketability, leasing potential, and physi-

cal condition would require a separate calculation for each parcel. This would make each year's determination a clump of five different evaluations. The figures for a given parcel might not be a constant from year to year, as changes in leasing would affect valuation in an income-based analysis. Clearly, the dispute is quite complicated factually as well.

As a factor, the exigency of the matter plays about equally. Both sides claim substantial exigency supports having the dispute in their own fora. Each argues its own purposes. Each case is arguable. The County's is more obvious: local governments require steady and predictable collection of revenue to maintain service to the public. The Debtor has the usual exigencies of a business in its position: the need to resolve its financial imbalances, or to know that it cannot, and quickly. Neither appeared to be a matter of life and death when the Debtor sued this out, but both are justifiable calls for judicial attention.

The exigencies of the parties' needs have to be factored in light of the likelihood of obtaining a prompt decision in either forum. The formal record is not well-developed as to either forum's docket. However, there is certainly no evidence that the state courts would not give the Debtor a trial setting and hearing at least as promptly as it would get here. More to the point, there is no question that a forum like the Minnesota Tax Court, specialized in the subject matter of the dispute, could render decision more efficiently and effectively.

Although it is inherently difficult to make an unjaundiced statement, the burden on this Court's docket and the agenda for adjudication are two reasons to defer the decision-making to the state courts. Bankruptcy filings in this District have abated somewhat over the last eighteen months, but there is still the aftermath of an all-time peak in consumer petitions; the dischargeability and avoidance litigation that arises out of Chapter 7 cases general-

ly takes six to eighteen months after a bankruptcy filing to ripen to the beginnings of judicial work. Considering those competing demands, it would be a substantial burden on this forum to conduct a lengthy trial and to prepare a decision that would require new familiarity with a foreign body of law, probably never to be used again. It would divert resources away from the disputes that are the central mission of the bankruptcy courts, to disputes that already have their presumptive forum under law.

The makeup of the Debtor's asset and debt structure is one of the most important factors for the analysis here. The Debtor went into Chapter 11 with scheduled liabilities to one major secured creditor, RL Northbrook Investors, Inc., which held a mortgage against its real estate.[28] The only other scheduled creditors were the County, and two insiders of the Debtor.[29] The Debtor had no other scheduled unsecured debt. Since the Debtor's bankruptcy filing, only one party has asserted an unsecured claim.[30] While RL Northbrook has been represented by counsel for this case, it has never noted an appearance at a hearing and it readily came to terms for the Debtor's use of its cash collateral.[31] Clearly, to the extent that the Debtor had to make peace with its major secured creditor, it has; it does not seem to require any of the remedies of Chapter 11 to for-

mally restructure the claim. The Debtor's sole asset was the real estate that is subject to the County's claims for taxes. As the case went forward, it became clear that the Debtor was here mainly to seek relief from the County's tax claims.

The crucial point is that there does not appear to be any non-insider constituency that would actively benefit from a resolution of the Debtor's disputes with the County. The case simply does not present the need for the global adjustment of debtor-creditor disputes that bankruptcy reorganization enables. By its very nature, Chapter 11 should provide a restructuring that preserves value for multiple constituencies that have investments in a debtor's operation. Where, as here, the only parties likely to benefit from a resolution of a debtor's dispute with a taxing authority are the debtor's own owner-investors, there is no warrant for a Bankruptcy Court to assume decision-making power over the dispute.

When the identity of parties in interest is thus fixed, the weighing of potential prejudice favors the County. The County has a major interest in preserving the uniformity and legitimacy of its own assessment process. That is best done by leaving the review of its decisions in the hands of a tribunal that maintains its own body of consistent interpretation. Allow-

28. The mortgage was originally granted in 1988 to San Jacinto Savings Association, of Bellaire, Texas. The mortgagee's rights came to RL Northbrook through one or more assignments, via the Resolution Trust Corporation.

29. The two scheduled unsecured claims are in favor of Larry and Mark Saliterman, limited liability partners of the Debtor who collectively hold 95 percent of the Debtor's equity. The Debtor describes the consideration for their claims as "Unsecured loans to LLP."

30. The party was the Welsh Companies, which had served as receiver of the Debtor's property pre-petition under an appointment by the Hennepin County District Court. Welsh Companies was in possession when the Debtor filed for Chapter 11, but complied

with its turnover obligation under 11 U.S.C. § 543 after that. It then filed a proof of claim for "Recvrship fees & exp" and moved for an order according the claim administrative-expense status. The Debtor responded with a motion to surcharge the claimant for what it termed the performance and incurring of excessive, unauthorized and inappropriate services and expenses. The matters were set for evidentiary hearing, but someone struck the hearing and the court file lacks any indication of a resolution.

31. The Debtor's cash collateral stipulation with RL Northbrook was approved by an order entered about six weeks after the commencement of the case. A renewal of the stipulation, with no stated date certain for termination, was approved in December, 1998.

ing the Debtor to shift the forum here undermines uniformity in at least two ways. The first is that litigating a specific case in an inexperienced tribunal may produce a decision that veers the state courts' established jurisprudence. The second is that other property owners throughout the state might elect the same strategy in the future, after seeing the Debtor dodge the presumptive process and forum. This could lead to a larger number of anomalous decisions. At the very least, it could result in two variant lines of interpretation. Neither would ensure the goal of the assessment process: promoting standard treatment for the state's property owners, and ensuring regularity and predictability for the public purse in the assessment and collection of *ad valorem* taxes.

Set against this is the only prejudice that the Debtor can identify: having its real estate bound to the tax liabilities that are already settled by operation of state law, however excessive the Debtor believes those to be, and having to comply with state procedures to challenge all tax liabilities that were not yet settled. This is the lot of all other owners of property in Hennepin County and in the state of Minnesota. It is not prejudice. At least absent a seriously-affected and substantial class of non-insider creditors, an inability to maintain a challenge to a tax for want of the means to prepay assessed taxes is not a handicap either.

The County clearly prevails, insofar as the prejudice to result from this Court taking the controversy, versus that from abstention.

Finally, when considered in context, bankruptcy's much-vaunted goal of promoting a "fresh start" for financially-distressed business enterprises does not count for much either. Assigning pivotal significance to the fresh start makes the most sense in a reorganization case when a debtor really has systemic financial distress, from a multiplicity of conflicting creditor claims. In such a case, the use of the centralized forum of the Bankruptcy Court may be necessary to ensure the debtor's survival, and to maximize returns for all constituencies. This is not the case here.

Beyond that, the fresh start cannot be used as a rote mantra against the basic limitations of a federal system. Where a locally-based debtor's financial problems distill to one dispute with a state government or its subdivision, and state law already gives the debtor an avenue of redress, it does not behoove a federal court to plow in. *In re Onondaga Plaza Maint. Co., Inc.*, 206 B.R. 653, 657 (Bankr. N.D.N.Y.1997). If a debtor cannot identify other constituencies whose investments would be protected by the assumption of bankruptcy jurisdiction over a tax dispute, it simply cannot expect a "fresh start" from a federal tribunal.

All told, it is appropriate that this Court abstain from hearing the Debtor's challenge to the County's tax claims under § 505(a). As a general matter, abstention is warranted as to all of the parcels for all of the years. This includes the parcels to which the earlier-discussed rationales do not apply: parcel 24, for taxes payable in 1995, and parcels 24 through 28, for taxes payable in 1996.

*b. Application of Tax Injunction Act.*

In the alternative, the TIA lies as to this last group of claims, to bar this Court from hearing a challenge to assessments for which the Debtor did not take petitions to the state courts. The Debtor is now time-barred from seeking judicial review as to these parcels for these years. It never obtained a court's determination under the state statute, and cannot do so now. Notwithstanding the lack of a formal, on-point decision, however, the Tax Injunction Act lies-even where a taxpayer has lost its right to seek an adjudication in a non-federal forum without actually obtaining one. *Sacks Bros. Loan Co., Inc. v. Cunningham*, 578 F.2d 172, 175 (7th Cir. 1978) (citing *Aluminum Co. of America v. Michigan*, 522 F.2d 1120). As the Eighth

Circuit has held, the *threshold* availability of a remedy and the remedy's internal characteristics are what make it "plain, speedy and efficient" within the meaning of the TIA-not whether the taxpayer still has the remedy available to it. *Burris v. City of Little Rock,* 941 F.2d at 721 (" ... a taxpayer's failure to take advantage of a remedy does not render it insufficient. . . . The relevant question is whether the remedy was available originally.")

Here, the Debtor no longer has the remedy of a petition in the state courts available to it for parcel 24, for taxes payable in 1995, and for parcels 24 through 28, for taxes payable in 1996; "the county's valuation stands." *Southdale Circle Partnership v. County of Hennepin,* 424 N.W.2d at 538. Under the Eighth Circuit's construction, this now-final administrative valuation is an adjudication that triggers the TIA. Thus, regardless of whether a non-federal forum has actually heard evidence or rendered a decision, the TIA deprives this Court of jurisdiction to hear the Debtor's challenge to the assessment for these parcels for 1995 and 1996.

*Result (In Summary, for All Parcels and All Years).*

The Debtor does not have the benefit of this Court as a forum under § 505(a)(1) to determine the tax liability for any of the five parcels in its landholding for any of the six years at issue; either the federal courts are barred outright from taking jurisdiction over its challenges to the taxes, or abstention is so strongly suggested by basic considerations of federalism as to be almost mandated. The County's mo-

tion must be granted in its entirety—as one for summary judgment as to the component claims treated in sections 1, 2 and 3 of the discussion, and as one for dismissal as to the component claims treated in sections 4 and 5.[32]

## ORDER

On the decision just recited,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. As to parcel 24, for taxes payable in 1992 through 1994, and as to parcels 25 through 28, for taxes payable in 1992 through 1995, the property tax liabilities thus identified were contested before and finally adjudicated in the Minnesota state courts before the Plaintiff's bankruptcy filing within the meaning of 11 U.S.C. § 505(a)(2)(A); thus, the Debtor may not obtain another determination of those property tax liabilities from this Court under color of 11 U.S.C. § 505(a)(1).

2. The Plaintiff's complaint is dismissed, as to the following requests for relief and for the following reasons:

 a. As to parcels 24 through 28, for taxes payable in 1997, because 28 U.S.C. § 1341 deprives this Court of jurisdiction over the Plaintiff's requests for relief under 11 U.S.C. § 505(a)(1); and

 b. As to parcel 24, for taxes payable in 1995, and parcels 24 through 28, for taxes payable in 1996, because this Court abstains from hearing the Plaintiff's requests for relief under 11 U.S.C. § 505(a)(1).

**32.** Where one of the preclusion doctrines is invoked to terminate a lawsuit short of trial, the reason is that a prior adjudication has settled the second litigations' entire claim, or issue(s) of fact and/or law that are part of its basis. This theory is brought forward by a motion for summary judgment under Rule 56. *In re Cochrane,* 124 F.3d 978 (8th Cir.1997) (collateral estoppel); *Sondel v. Northwest Airlines, Inc.,* 56 F.3d 934 (8th Cir.1995) (*res judicata* ). Because the County premised part of its argument on a lack of subject matter jurisdiction, the relevant aspects of its motion are properly treated as one for dismissal under Rule 12(b) rather than one for summary judgment-even though the consideration of it has required reference to materials outside the pleadings. *Deuser v. Vecera,* 139 F.3d 1190, 1192 n. 3 (8th Cir.1998). The granting of a motion for abstention is an abdication of decision-making power to another forum; once that is done, there is nothing to do but dismiss the vehicle through which the respondent sought to have the decision-making power exercised.

3. The Plaintiff's motion for a more definite statement is denied, as moot.

LET JUDGMENT BE ENTERED IN ACCORDANCE WITH TERMS 1 AND 2.