United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 28, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-21175

_____

In the Matter of:    GEORGE R HINSLEY

                            Debtor

------------------------------------

PATRICIA JO HINSLEY; GEORGE R HINSLEY

                            Appellees

v.

HARRIS COUNTY, State of Texas; CITY OF HOUSTON; HOUSTON
INDEPENDENT SCHOOL DISTRICT; FEDERAL DEPOSIT INSURANCE
CORPORATION

                            Appellants

_____

In the Matter of:    GEORGE R HINSLEY

                            Debtor

------------------------------------

GEORGE R HINSLEY; PATRICIA JO HINSLEY

                            Appellees

v.

FEDERAL DEPOSIT INSURANCE CORPORATION

                            Appellant

_____

Appeals from the United States District Court
for the Southern District of Texas
H-97-CV-2694

_____

Before KING, Chief Judge, and DeMOSS and CLEMENT, Circuit Judges.

KING, Chief Judge:[*]

-----

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

At issue on appeal is the district court's determination of the debtor's tax liability on certain real property owned by the debtor and abandoned by the bankruptcy estate. We reverse the district court's order on tax liability and render judgment in favor of the appellants.

## FACTUAL and PROCEDURAL BACKGROUND

The general facts underlying this bankruptcy case are set forth in two prior opinions of this court and will not be repeated herein. See Hinsley v. Boudloche (In re Hinsley), 201 F.3d 638 (5th Cir. 2000); Hinsley v. Boudloche (In re Hinsley), No. 97-20967, 149 F.3d 1179 (5th Cir. July 15, 1998) (unpublished). Relevant for the purposes of this controversy are the facts related to a piece of property purchased in 1985 by a partnership of which the debtor, George Hinsley ("Mr. Hinsley"), was the general partner.

Western Bank Westheimer loaned the partnership $3.8 million to purchase the property, which is located at 6200 Kansas, Houston, Texas (the "Kansas property"). In October 1987, the Federal Deposit Insurance Corporation ("FDIC") succeeded to the rights of Western Bank Westheimer, including its rights related to the note on the Kansas property. Mr. Hinsley thereafter defaulted on the 1985 Western Bank Westheimer note and, in May 1992, the FDIC

obtained a judgment against Mr. Hinsley in the amount of $4.849 million.

Mr. Hinsley filed for bankruptcy protection in 1995. On June 17, 1998, the district court granted the trustee's notice of intent to abandon the Kansas property. The estate thus abandoned any interest in the Kansas property in favor of Mr. Hinsley. Later, in May 2000, as part of a settlement agreement related to an adversary proceeding brought by the trustee of Mr. Hinsley's estate – to set aside certain alleged "fraudulent transfers" between Mr. Hinsley and his wife Patricia Hinsley ("Ms. Hinsley") – Ms. Hinsley acquired the note held by the FDIC and secured by the deed of trust lien on the Kansas property. Ms. Hinsley thus acquired lien rights in and to the Kansas property.

On May 18, 2001, after all of the bankruptcy estate matters were essentially resolved, Mr. Hinsley filed a motion for redetermination of tax liability pursuant to 11 U.S.C. § 505, requesting that the district court reassess the amount of tax liability of Mr. Hinsley for ad valorem property taxes on the Kansas property for the tax years 1988 through 2000. Specifically, he contended that the tax valuation of the Kansas property throughout the years in question exceeded the actual fair market value of the Kansas property because the property had major contamination problems. The appellants, Harris County, the State of Texas, The City of Houston and Houston Independent School District (together, the "taxing authority"), opposed the motion for

redetermination of tax liability, arguing that the district court did not have jurisdiction to make the requested valuation and, alternatively, that the district court should, in its discretion, abstain from making the requested valuation.

On November 1, 2001, following a hearing on Mr. Hinsley's motion for redetermination, the district court determined the tax liability on the Kansas property for the tax years 1988 through 2001 to be $389,359.76.  The taxing authority and the FDIC timely appealed.

**ANALYSIS OF RELEVANT ISSUES ON APPEAL**

The district court's order granting Mr. Hinsley's motion for redetermination is brief.  It states, in full, that:

> The court determines that the tax liability for the debtor, an owner through the debtor, or the F.D.I.C. for ad valorem property taxes assessed by Harris County, the State of Texas, the City of Houston, and the Houston Independent School District on the property at 6200 Kansas, Houston, Texas (fully described in exhibit A) for the tax years January 1, 1988, through July 30, 2001, is $389,259.76.

Implicit in the order is a decision not to abstain (as the taxing authority requested) from exercising jurisdiction over the debtor's motion for redetermination of the ad valorem taxes on the Kansas property.  We review a decision to abstain or not to abstain for abuse of discretion.  See Matter of Howe, 913 F.2d 1138, 1143 (5th Cir. 1990).  Although, in its order, the district court gave no reasons for its decision to exercise jurisdiction, rather than

4

remanding for what would likely be a useless exercise, we have evaluated the reasons for and against exercising jurisdiction;[1] we find that the district court abused its discretion in not abstaining; and we render judgment for the taxing authority.[2]

## A.    11 U.S.C. § 505

Title 11 of the United States Code § 505 provides, in relevant part, that "[e]xcept as provided in paragraph (2) of this subsection, the court <u>may</u> determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction."   11 U.S.C. § 505(a) (emphasis added).  Thus, as stated by this court, "absent the express statutory limitations in § 505(a)(2)(A) and (B),

---

[1]  As stated, the district court did not specifically make a ruling on the abstention question.  It also did not mention 11 U.S.C. § 505, nor did it cite to our recent § 505 case, <u>In re Luongo</u>, 259 F.3d 323 (5th Cir. 2001), or weigh any of the <u>Luongo</u> factors relevant to the § 505 abstention inquiry.  Indeed, during the hearing on the debtor's motion for redetermination, the district court responded to the taxing authority's request to discuss procedural abstention issues under § 505 by stating, "Skip that.  Let's get down to what happened if [the debtor's counsel] was right [regarding the over-valuation of the property]."  The degree of deference afforded the district court's implied decision to abstain is thus limited in these circumstances.

[2]  Although we reverse the district court's order on abstention grounds, we reject the implication in the district court's order that the FDIC can be liable for taxes on a piece of property it does not own.  As set forth in the order of sale, liquidation, and payment, entered August 16, 2000, the FDIC was ordered to transfer its lien, not ownership, to Ms. Hinsley.

[neither of which has any application here], bankruptcy courts have universally recognized their jurisdiction to consider tax issues brought by the debtor, limited only by their discretion to abstain." Luongo v. Luongo (In re Luongo), 259 F.3d 323, 329 (5th Cir. 2001).

Approximately three months before the district court's order was entered, our court discussed certain factors that must be considered by the bankruptcy court in deciding whether it should exercise discretion to abstain from making a valuation pursuant to § 505. Luongo, 259 F.3d at 331-32. In so doing, we stated that:

> When bankruptcy issues are at the core of a dispute, it would be absurd for a bankruptcy court to abstain from deciding those matters over which it has particular expertise. On the other hand, simply because tax law is somehow implicated does not automatically trigger abstention . . . Accordingly, we hold that where bankruptcy issues predominate and the Code's objectives will potentially be impaired, bankruptcy courts should generally exercise jurisdiction. Conversely, absent any bankruptcy issues or implication of the Code's objectives, it is usually appropriate for the bankruptcy court to decline or relinquish jurisdiction.

Id. (internal footnote omitted). The specific non-exhaustive examples of "bankruptcy issues" the court alerted to were "ensuring the efficient administration and equitable distribution of the estate for the benefit of the creditors and protecting the debtor's right to a fresh start." Id. at 332.

**B. Application of § 505 Abstention Factors to this Case**

Weaving the facts of this case through the factors cited in Luongo, we are satisfied that abstention is appropriate here. All issues related to the bankruptcy estate had been resolved when Mr. Hinsley filed his motion for redetermination. Of more importance to the relevant factors, however, the property to be valued in Mr. Hinsley's motion for redetermination is <u>not</u> property of the bankruptcy estate, nor will bankruptcy law or the Bankruptcy Code be implicated in the requested tax valuation. Because the trustee of Mr. Hinsley's estate specifically abandoned the property relevant to this tax redetermination motion through a notice of intent to abandon property nearly three years before Mr. Hinsley filed his motion for redetermination, it simply cannot be said that bankruptcy issues will predominate in the requested valuation. <u>See, e.g.</u>, <u>In re Dewnsnup</u>, 908 F.2d 588 (10th Cir. 1990) (when abandoned, property ceases to be property of the bankruptcy estate). In the hearing on Mr. Hinsley's motion for redetermination, the trustee of Mr. Hinsley's estate stated his position regarding whether the ad valorem tax should be adjusted as follows: "Well, Your Honor, I don't have a dog in that fight." This admission underscores the evident fact that the beneficiaries of the reduction in tax liability for the Kansas property are Mr. Hinsley (the owner of the Kansas property) and Ms. Hinsley (a lienholder on the property), not the estate. Although Ms. Hinsley is also an unsecured creditor in the estate of Mr. Hinsley, her enjoyment of a reduction in the tax liability that primes her lien

7

on the Kansas property can be tied to the estate in only an extremely attenuated sense.

Several courts have noted the creditor (rather than debtor) oriented policy goals of § 505.  See, e.g., 99 Invest. v. Maricopa Cty. (In re 99 Invest.), No. 98-16576, 205 F.3d 1352, at *1 (9th Cir. Dec. 16, 1999) (unpublished) (holding that "[a] determination of tax liability would not advance the creditor-oriented policy goals of § 505"); Kearns v. Kearns (In re Kearns), 219 B.R. 823, 827 (8th Cir. 1998) ("[I]f the estate is not to receive the refund, the matter does not belong in bankruptcy court.  The general unsecured creditors, not the debtor, are the intended beneficiaries of section 505(a)"); In re American Motor Club, Inc., 139 B.R. 578, 581 (Bankr. E.D.N.Y. 1992) (stating that courts should abstain from making a § 505 valuation if the impact of abstention on the general administration of the estate is minimal); Millsaps v. United States (In re Millsaps), 133 B.R. 547, 554-555 (Bankr. M.D. Fla. 1991) ("Although Congress extended jurisdiction to the bankruptcy court to determine the debtors' personal tax liability under section 505(a)(1), the debate in the House of Representatives leading to the passage of the section clearly shows that, when there is no need for a determination of the amount of the tax for estate administration purposes, Congress did not intend or foresee that the bankruptcy court would be the forum for this litigation."), aff'd, 138 B.R. 87 (M.D. Fla. 1991).

In Luongo, we cautioned against taking too narrow a view of the goals of the Bankruptcy Code, stating that "[t]he bankruptcy court's responsibility in administering the estate is not only to achieve a fair and equitable distribution of assets to the creditors, but also to 'relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh.'" 259 F.3d at 330 (citation omitted). We did so, however, under very different factual circumstances than we are presented with here. There, the Internal Revenue Service ("IRS") setoff the debtor's overpayment for tax year 1997 against her unpaid 1993 tax liability that had been discharged in bankruptcy. Id. at 327. The tax liability issue presented to the bankruptcy court thus dealt almost entirely with bankruptcy law (including the interpretation of apparent conflicting sections of the Bankruptcy Code) and related to a debt that had been discharged by the same bankruptcy court in the earlier bankruptcy proceeding. Id. Faced with a situation where factors integral to the Code's objectives – the debtor's "rights to the integrity of her discharge and to the use of her exemptions" – were present, we thus upheld the bankruptcy court's decision not to abstain. Id. at 332.

We do not see Luongo as inconsistent with our holding today. The tax valuation on non-estate property subject to state taxation does not implicate the Code's objectives. It is undisputed that, despite possible environmental contamination, the property here is worth at least as much as the taxes owing on it. The extent to

9

which the "fresh start" objective of the Bankruptcy Code is implicated is thus minimal, particularly given that neither the debtor nor the trustee made any effort to contest the allegedly inflated valuation on the Kansas property as avenues to challenge the state tax valuation passed them by.  See New Haven Projects Ltd. Liab. v. City of New Haven (In re New Haven Projects Ltd. Liab.), 225 F.3d 283, 290 (2d Cir. 2000) ("Section 505 was enacted to protect creditors from the prejudice caused by an ailing debtor's failure to contest tax assessments . . . It was not enacted to afford debtors a second bite at the apple at the expense of outside creditors."); Brandt-Airflex Corp. v. Long Island Trust Co. (In re Brandt-Airflex Corp.), 843 F.2d 90, 96 (2d Cir. 1988) ("[T]he bankruptcy court pointed out quite correctly that a literal reading of § 505 makes the Bankruptcy Courts a second tax court system, empowering the Bankruptcy Courts to consider 'any' tax whatsoever, on whomsoever imposed."); Northbrook Partners LLP v. Cty. of Hennepin (In re Northbrook Partners LLP), 245 B.R. 104, 121 (Bankr. D. Minn. 2000) ("[T]he fresh start cannot be used as a rote mantra against the basic limitations of a federal system."); In re Swan, 152 B.R. 28, 30 (Bankr. W.D.N.Y. 1992) ("What the Debtor is requesting in this case is nothing more than an attempt to gain a second bite of the apple, which would only benefit her and not her creditors, a result never intended under Section 505."). Further, as discussed, the trustee here abandoned the property that is central to the tax liability issue in Mr. Hinsley's motion.

10

Although Mr. Hinsley attempts to posture this litigation as interwoven with the bankruptcy estate, Ms. Hinsley's interest in the property bears little, if any, relation to her capacity as an unsecured creditor in the estate and the Kansas property is simply not property of the bankruptcy estate.

In contrast to the situation confronted in <u>Luongo</u>, bankruptcy issues do not predominate here, nor will performing the valuation further the efficient administration or equitable distribution of the estate for the benefit of the creditors. Where, as here, the only parties likely to benefit from the resolution of a debtor's dispute with the taxing authority are the debtor and his lienholder on property that is not a part of the estate, there is no warrant for a bankruptcy court to assume decision-making power over the dispute.

## CONCLUSION

Upon a careful review of the record and relevant law, this court holds that the district court abused its discretion in failing to abstain. Further, because abstention is appropriate under the facts of this case, we REVERSE and RENDER judgment in favor of the appellants.