Revised August 9, 2001

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-10475

_____

In the Matter of: CONSTANCE LUONGO,

Debtor.

* * * * *

INTERNAL REVENUE SERVICE,

Appellee,

v.

CONSTANCE LUONGO,

Appellant.

_____
Appeal from the United States District Court
for the Northern District of Texas
_____

July 18, 2001

Before BARKSDALE, EMILIO M. GARZA and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Factual and Procedural Background

This case involves a debtor's claim to recover an income tax overpayment for her 1997 tax year. Pursuant to 26 U.S.C. § 6402(a) of the Internal Revenue Code[1] and 11 U.S.C. § 553(a) of

_____

[1] Section 6402(a) of the I.R.C. provides:
In the case of any overpayment, the Secretary . . . may credit the amount of such overpayment . . . against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall . . . refund any balance to such person.

the Bankruptcy Code,[2] the Internal Revenue Service ("IRS") setoff her overpayment against her unpaid 1993 tax liability, a liability which had been discharged under § 727 of the Bankruptcy Code. After the setoff occurred, the debtor moved to reopen her case, and filed amended schedules which for the first time listed her 1997 income tax overpayment as an exempt asset under § 522. The IRS did not file any objection to the reopening of the case or the amended schedules. The bankruptcy court granted the motion to reopen and her schedules were amended. The plaintiff/debtor, Constance Luongo, then brought an action in the bankruptcy court to recover her 1997 tax overpayment. She asserted that the setoff executed by the IRS was improper because (1) the 1993 tax debt had been discharged in bankruptcy, and (2) the 1997 tax overpayment had been exempted from her bankruptcy estate. In response, the IRS argued that the bankruptcy court lacked jurisdiction or that it should abstain from hearing the matter. The IRS further asserted that Bankruptcy Code § 553 preserved the IRS' right to setoff under § 6402(a), notwithstanding the discharge of debtor's unpaid 1993 tax debt or her attempt to exempt the 1997 overpayment. The case was submitted to the bankruptcy court on cross-motions for summary judgment.

The bankruptcy court adopted the opinion in *Alexander v.*

---

[2] "Although no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy." *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 18, 116 S.Ct. 286, 289 (1995).

*Internal Revenue Service*, 225 B.R. 145 (Bankr. W.D. Ky. 1998), and granted plaintiff's motion for summary judgment. Construing the conflicting mandates of the two sections in favor of the debtor, the bankruptcy court in *Alexander* held that the language in § 522(c) that "property exempted under this section is not liable . . . for any debt of the debtor that arose . . . before the commencement of the case . . ." took precedence over the language of § 553(a) that "this title [the Bankruptcy Code] does not affect any right of a creditor to offset. . . ." The IRS appealed and the district court reversed. The district court held that based on the clear and unambiguous language of § 553(a) the IRS' right of setoff was unaffected by Luongo's claims that the tax overpayment is exempt property and the tax liability was discharged in the bankruptcy proceeding. Appellant Luongo filed a timely notice of appeal.

While neither the district court nor the bankruptcy court afforded the IRS' jurisdictional claims meaningful discussion in their respective opinions, we address these claims first as they are necessarily antecedent to any determination of the merits. In so doing, we conclude that the bankruptcy court had jurisdiction to resolve the debtor's tax dispute and did not abuse its discretion in not abstaining. Further, we hold (1) that the IRS permissibly setoff Appellant's prepetition tax overpayment against her discharged debt and (2) that Appellant could not exempt the overpayment under § 522. Because we find that Appellant could not properly exempt the overpayment at issue, we do not reach the exemption issue decided below -- that

3

is, whether § 522(c) prevents a creditor from exercising its right to setoff preserved in § 553. The judgment of the district court is AFFIRMED.

## Analysis

### I. Jurisdiction and Abstention

The IRS contends first that the bankruptcy court lacked jurisdiction to consider this matter, or in the alternative, should have abstained. Section 505 authorizes bankruptcy courts to determine the amount or legality of any tax liability of the estate or the debtor. 11 U.S.C. § 505(a)(1).[3] This authority, however, is not unlimited. Section 505(a)(2)(B) provides that the bankruptcy court may not determine –

> (B) any right of the estate to a tax refund, before the earlier of –
> (i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or
> (ii) a determination by such governmental unit of such request.

The IRS contends that the language of § 505(a)(2)(B) precludes a bankruptcy court from deciding the personal tax liability of the debtor. It relies on the inclusion of the terms "the estate" and "the trustee" to argue that § 505 contemplates that only a trustee may obtain a tax refund in bankruptcy court, and then

---

[3] Section 505(a)(1) provides:
Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

4

only if the trustee is seeking a refund on behalf of the estate.

Initially, we note that the IRS' reading of this subsection is contrary to the broad grant of jurisdiction in § 505(a)(1) permitting a bankruptcy court to determine "the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction."  Furthermore, the legislative statements accompanying § 505 make clear that the section "authorizes the bankruptcy court to rule on the merits of any tax claim involving an unpaid tax, fine, or penalty relating to a tax, or any addition to a tax, *of the debtor* or the estate."  124 Cong.Rec. H 11110 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards introducing the House amendment)(emphasis added), reprinted in, 1978 U.S.C.C.A.N. 5787, 6436, 6490.  And under the paragraph heading "Jurisdiction of the tax court in bankruptcy cases," the legislative statements instruct that "the bankruptcy judge will have authority to determine which court will determine the merits of the tax claim both as to claims against the estate and *claims against the debtor concerning his personal liability for nondischargeable taxes*."  124 Cong.Rec. 32414 (1978) (Statement of Representative Edwards), reprinted in 1978 U.S.C.C.A.N. 6436, 6492-93 (emphasis added); 124 Cong.Rec. 34014 (1978) (Statement of Senator DeConcini), reprinted in 1978 U.S.C.C.A.N. 6505, 6562; *see also Begier v. IRS*, 496 U.S. 53, 64-65 n. 5, 110 S.Ct. 2258, 2266 n. 5, 110 L.Ed.2d 46 (1990) ("Because of the absence of a

5

conference and the key roles played by Representative Edwards and his counterpart floor manager Senator DeConcini, we have treated their floor statements on the Bankruptcy Reform Act of 1978 as persuasive evidence of congressional intent."). The IRS cites no case supporting its restrictive reading of the bankruptcy court's jurisdiction under § 505. On the contrary, absent the express statutory limitations in § 505(a)(2)(A) and (B), bankruptcy courts have universally recognized their jurisdiction to consider tax issues brought by the debtor, limited only by their discretion to abstain.[4] *In re Hunt*, 95 B.R. 442, 445 (Bankr.

---

[4] The dissent would dismiss Luongo's action on the ground that the bankruptcy court's jurisdiction extends only to claims for refunds that benefit the estate. We cannot agree. The dissent's conclusion would have a far-reaching impact on the scope of the bankruptcy court's jurisdiction over tax matters. Yet, no court has recognized such a limitation. Several courts have, however, recognized the right of a debtor to bring a refund action. *See In re Ryan*, 64 F.3d 1516, 1520 (11th Cir. 1995) (allowing Chapter 7 debtor to maintain a refund action in bankruptcy court upon compliance with treasury regulations); *In re Gribben*, 158 B.R. 920, 924 (S.D.N.Y. 1993) (concluding that "§ 106(a) waives the Government's sovereign immunity where a bankrupt debtor seeks a refund in circumstances where the IRS has exercised the right under § 553(a) of the Bankruptcy Code to offset that refund against other tax liabilities.").

Section 505(a)(2)(B), like § 505(a)(2)(A), limits the jurisdictional grant in § 505(a)(1). Section 505(a)(1) grants the bankruptcy court jurisdiction over *any tax claim*, including refund claims; § 505(a)(2)(B) then prescribes the limits particular to the bankruptcy court's ability to determine a refund. The intended purpose of subsection (a)(2)(B) was to prevent a refund claim from languishing in the administrative processes, not to restrict the scope of the bankruptcy court's jurisdiction over tax refunds to those benefitting the estate. *In re St. John's Nursing Home, Inc.*, 154 B.R. 117, 120 (Bankr.D.Mass. 1993). Section 505(a)(2)(B) thus permits the bankruptcy court to make a determination of a refund if the taxing authority does not act upon a refund claim within 120 days. Although not disputed by the parties, we note, in response to the dissent, that Luongo complied with the requirements of §

505(a)(2)(B) by filing her annual tax return.  *See* 26 C.F.R. § 301.6402-3(a)(5) (1994) ("A properly executed individual . . . income tax return . . . shall constitute a claim for refund or credit . . . for the amount of the overpayment disclosed by such return").  The IRS, by setting off the overpayment against the discharged tax liability, made a "determination" in accordance with § 505(a)(2)(B) of Luongo's refund-request for the overpayment.

Even the dissent's focus on the language "the right of the estate to a refund" does not support its position that § 505(a)(2)(B) deprives the bankruptcy court of jurisdiction to hear Luongo's claim.  In this regard, the dissent mistakenly concludes that property listed as exempt by the debtor does not fall in this category.  On the contrary, it is a fundamental principle of bankruptcy law that only property of the estate may be exempted by the debtor. *Owen v. Owen*, 500 U.S. 305, 308 (1991).  The estate comprises "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a).  In the present case, any overpayment made by Luongo occurred prepetition and any right to a refund is therefore property of the estate. *Kokoszka v. Belford*, 417 U.S. 642, 645-58, 94 Sct. 2431, 2433-35 (1974).  Upon proper recognition that exempted property first enters the estate and that the estate has a right to any refund in the present case, it becomes clear that our holding does not read the term "right of the estate" out of the statute as alleged by the dissent.

The dissent concedes that Luongo could bring a claim for a determination of her tax liability.  The dissent, however, would not allow Luongo to bring her refund claim.  The dissent's distinction apparently derives, in part, from its premise that general unsecured creditors, not the debtor, are the intended beneficiaries of § 505(a).  Relying on this premise, the dissent endeavors to rewrite the language of § 505(a)(2)(B) by converting "the right of the estate to a refund" into "a refund that benefits the estate."  While seemingly a benign distinction, the dissent's erroneous limitation of the estate to "property which will be used to pay the creditors," renders it significant.  The dissent's ultimate result is thus to permit only refunds that benefit creditors, not "what Luongo seeks through her action- a refund solely for her own benefit."  Under the dissent's interpretation, even the trustee could not seek a refund if the debtor had listed it as exempt on her schedules, thereby preventing the bankruptcy court from protecting the debtor's use of exemptions to gain a fresh start regardless of who filed the refund action.  The dissent's limitation on the bankruptcy court's jurisdiction also ignores the fact that a bankruptcy court is entitled to determine the debtor's nondischargeable tax liability.  Congress' allowance

7

N.D. Tex. 1989) ("[T]he reported decisions uniformly recognize the Bankruptcy Court's jurisdiction to determine a debtor's tax liability . . . .").

The bankruptcy court's ability to abstain is premised on Congress' use of the word "*may*" in § 505. *In re Beisel*, 195 B.R. 378, 379 (Bankr. S.D. Ohio 1996) ("Section 505(a)(1) allows but does not require the Bankruptcy Court to determine a debtor's tax liabilities."). The factors frequently cited by the courts in deciding whether to abstain include the complexity of the tax issues to be decided, the need to administer the bankruptcy case in an orderly and efficient manner, the burden on the bankruptcy court's docket, the length of time required for trial and decision, the asset and liability structure of the debtor, and the prejudice to the taxing authority. *In re Hunt*, 95 B.R. at 445. Several courts have also taken into consideration what they identify as the two-fold purpose of § 505: (1) "affording a forum for the ready determination of the legality or amount of tax claims, which determination, if left to other proceedings, might delay conclusion of the administration of the bankruptcy estate," *In re Diaz*, 45 B.R. 137, 138 (Bankr. S.D. Fla. 1984), and (2) "providing an opportunity for the trustee, on behalf of the creditor, to contest the validity and amount of a tax claim when the debtor has been unwilling or unable to do so." *In re*

---

of the bankruptcy court to make such a determination undermines the dissent's assertion that § 505 serves the limited purpose of allowing the bankruptcy court to adjudicate tax matters affecting the estate or benefitting creditors.

*Millsaps*, 133 B.R. 547, 554 (Bankr. M.D. Fla.1991); *see also City of Amarillo v. Eakens*, 399 F.2d 541, 543-44 (5th Cir. 1968) ("The amendment, by authorizing redeterminations in those instances where the tax claim was never appealed, serves to protect creditors of the bankrupt from the bankrupt's lack of diligence.").

The bankruptcy courts that have focused on these requirements consider general unsecured creditors, not the debtor, the intended beneficiaries of § 505(a). *In re Williams*, 190 B.R. 225, 227 (Bankr. W.D. Pa. 1995); *In re Tropicano Inc.*, 128 B.R. 153, 161 (Bankr. W.D. Tex. 1991). These courts conclude that when neither of the above two purposes would be served by a bankruptcy court determination of a chapter 7 debtor's tax liability, abstention is warranted. These cases improperly view § 505 in isolation without proper deference to the other goals of the Bankruptcy Code. The bankruptcy court's responsibility in administering the estate is not only to achieve a fair and equitable distribution of assets to the creditors, but also to "relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh." *Local Loan v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699 (1934). Thus, a court should consider the impact of the abstention not only on the general administration of the estate, but also on the debtor. *In re Smith*, 122 B.R. 130, 133-134 (M.D. Fla. 1990) (declining to exercise discretion because it would not assist the debtor to have a fresh start in life).

Another touchstone of the abstention inquiry is the substantive law governing the material issues. When bankruptcy issues are at the core of a dispute, it would be absurd for a bankruptcy court to abstain from deciding those matters over which it has particular expertise. On the other hand, simply because tax law is somehow implicated does not automatically trigger abstention. Just as bankruptcy courts are often called upon to apply state law in resolving bankruptcy matters, so too may they apply tax law in appropriate circumstances.[5] In tax cases, the issue of abstention often arises with respect to questions of dischargeability. Many of the courts that have abstained cite the legislative history that:

> . . . in the case of nondischargeable Federal income taxes, the IRS would be required to issue a deficiency notice to an individual debtor, and the debtor could then file a petition in the Tax Court-or a refund suit in a district court-as the forum in which to litigate his personal liability for a nondischargeable tax.

124 Cong. Rec. H 11110 (Sept. 28, 1978, remarks of Rep. Edwards); S 17427 (Oct. 6, 1978, identical remarks of Sen. DeConcini). This quote and the cases relying on it are predicated on the non-dischargeability of the tax. Where the determination of dischargeability or other bankruptcy specific issues is fully resolved, we agree with the IRS that there is no reason why the suit cannot be heard by a district court, the Tax Court, or the

---

[5] "Bankruptcy courts routinely interpret state law in order to resolve disputes in bankruptcy cases." *In re Wilson*, 85 B.R. 722, 727 (Bankr.E.D.Pa.1988). For example, the bankruptcy court may avoid a preference under 11 U.S.C. § 547 or a fraudulent transfer under 11 U.S.C. § 548, even though these defenses are intertwined with state law.

Court of Federal Claims.[6]  Our case, on the other hand, is more analogous to those cases where the court was faced with the preliminary bankruptcy question of whether the tax liability was dischargeable.  *See In re Shapiro*, 188 B.R. 140, 143 (Bankr. E.D. Pa. 1995)(concluding that while the bankruptcy court is the appropriate forum to determine the bankruptcy issue of dischargeability, it would be inappropriate for the bankruptcy court to decide the amount of the debtor's non-dischargeable liability, which relies on non-bankruptcy law); *In re Wood*, 1994 WL 759753 (Bankr. N.D. Ga. Nov. 21, 1994) (court abstained from fixing the amount of the debt but set a trial with regard to the issue of dischargeability); *In re Gosciniak*, 1994 WL 585928, at *3 (Bankr. S.D. Ind. May 25, 1994) (court ruled on dischargeability but abstained from deciding amount of liability).  In the instant case, Appellant was not requesting the bankruptcy court to determine the amount of her tax liability, but instead whether her tax overpayment, by virtue of exemption or dischargeability, was protected from setoff by the IRS.

In *In re Shapiro*, the bankruptcy court noted several cases which follow the increasing trend of "dismissing a pending adversary proceeding which does not involve bankruptcy law issues, upon dismissal of the bankruptcy case itself."  188 B.R. at 148 (citing *Chapman v. Currie Motors, Inc.*, 65 F.3d 78 (7th

---

[6] Taxpayers can appeal adverse determinations by the IRS to the Tax Court or Court of Federal Claims, or they can pay any assessment and bring suit in the district court.  I.R.C. § 7422.

Cir. 1995)). In *Chapman*, the Seventh Circuit found that the bankruptcy court properly abstained from deciding a "related to" proceeding where the resolution of the matter did not rely on bankruptcy law and neither party alleged that the objectives of the Bankruptcy Code would be impaired. 65 F.3d at 82. We find such reasoning persuasive. Accordingly, we hold that where bankruptcy issues predominate and the Code's objectives will potentially be impaired, bankruptcy courts should generally exercise jurisdiction.[7] Conversely, absent any bankruptcy issues or implication of the Code's objectives, it is usually appropriate for the bankruptcy court to decline or relinquish jurisdiction. We recognize, of course, that there may be instances where exceptional factors involving judicial economy, fairness and convenience to the litigants, or the simplicity of the non-bankruptcy issues involved may counsel otherwise. *See In re Smith*, 866 F.2d 576, 580 (3d Cir. 1989). Such instances should be rare and we trust bankruptcy courts will exercise their jurisdiction prudently.

We now consider the application of this standard to the present case. This Court reviews the bankruptcy court's decision not to abstain for an abuse of discretion. *Matter of Howe*, 913 F.2d 1138, 1143 (5th Cir. 1990). In this case, Appellant

_____

[7] Such bankruptcy objectives include, but are not limited to, ensuring the efficient administration and equitable distribution of the estate for the benefit of the creditors and protecting the debtor's right to a fresh start. *See In re Henderson*, 18 F.3d 1305, 1307 (5th Cir. 1994) (recognizing "the Bankruptcy Code's important objective of allowing the debtor to gain a fresh start in his financial life.").

received a discharge of her 1993 tax liability pursuant to § 727 of the Bankruptcy Code. The IRS then exercised its right to setoff established in § 6402 of the I.R.C. and preserved in § 553 of the Bankruptcy Code. Finally, Appellant claimed her tax overpayment as an exempt asset under § 522 of the Bankruptcy Code. We begin the abstention inquiry by identifying the material issues: first, whether Appellant could exempt her tax overpayment under § 522; second, whether § 522(c) immunizes exempt property from setoff; and third, whether §§ 524(a)(2) and 553 of the Bankruptcy Code permit a creditor to setoff against discharged debt. The resolution of these issues, although involving the IRS' right to setoff under § 6402(a) of the I.R.C., was governed predominantly by bankruptcy law. Notably, there is no dispute over the amount of the parties' respective tax liabilities or that outside of bankruptcy the IRS would have the right to setoff. Instead, the resolution of this matter required the bankruptcy court to interpret conflicting sections of the Bankruptcy Code and to determine the proper scope of the parties' rights to dischargeability, exemption, and setoff. Such determinations are best made by the bankruptcy court. The second prong of the abstention inquiry also counsels in favor of the bankruptcy court retaining jurisdiction. Appellant's rights to the integrity of her discharge and to the use of her exemptions are integral to the Code's objective in providing a fresh start. Under the circumstances presented here, the bankruptcy court's decision not to abstain was clearly proper.

13

## II. IRS' Right to Setoff

On May 19, 1998, Appellant Luongo filed for relief under Chapter 7 of the Bankruptcy Code. At the time of her filing she owed the IRS $3,800 in unpaid taxes from her 1993 tax year. On August 15, 1998, Appellant filed her 1997 income tax return showing an overpayment of $1,395.94. The bankruptcy court entered an order on September 10, 1998 discharging Appellant's personal liability for her 1993 income tax deficiency. Subsequently, in November 1998, the IRS executed its claim to setoff and applied all of Appellant's 1997 tax overpayment to her unpaid 1993 tax liability.[8]

Appellant first argues that the discharge of her 1993 tax liability under § 524(a)(2) bars the IRS from executing its claim to setoff. Section 524(a)(2) provides:

> (a) A discharge in a case under this title –
>
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or *offset* any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;

11 U.S.C. § 524(a)(2) (emphasis added). There is an apparent inconsistency between § 524(a)(2)'s prohibition on offsets and § 553's recognition of setoff rights. Section 553(a) provides:

> (a) Except as otherwise provided in this section and

---

[8] A setoff or offset is "[a] deduction; a counterclaim; a contrary claim or demand by which a given claim may be lessened or canceled." BLACK'S LAW DICTIONARY 1085 (6th Ed. 1990). Setoff is distinguished from recoupment in that a setoff is "[a] counter-claim demand which defendant holds against plaintiff, arising out of a transaction *extrinsic* of plaintiff's cause of action." BLACK'S LAW DICTIONARY 1372 (6th Ed. 1990).

> sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . .

We agree with the vast majority of courts considering the relationship between § 524(a) and § 553 that a debtor's discharge in bankruptcy does not bar a creditor from asserting its right to setoff. *See In re Davidovich*, 901 F.2d 1533 (10th Cir. 1990); *In re Buckenmaier*, 127 B.R. 233 (9th Cir. B.A.P. 1991); *Posey v. Dept. of Treasury*, 156 B.R. 910 (W.D.N.Y. 1993); *Reich v. Davidson Lumber Sales Emp. Ret. Plan*, 154 B.R. 324 (D. Utah 1993); *In re Thompson*, 182 B.R. 140 (Bankr. E.D. Va. 1995); *In re Runnels*, 134 B.R. 562 (Bankr. E.D. Tex. 1991); *In re Morgan*, 77 B.R. 81 (Bankr. S.D. Miss. 1987); *In re Conti*, 50 B.R. 142 (Bankr. E.D. Va. 1985); *In re Ford*, 35 B.R. 277 (Bankr. N.D. Ga. 1983); *In re Shaw Constr. Corp.*, 17 B.R. 744 (Bankr. E.D. Pa. 1982); *Krajci v. Mt. Vernon Consumer Discount Co.*, 16 B.R. 464 (Bankr. E.D. Pa. 1981). *But see In re Dezarn*, 96 B.R. 93, 95 (Bankr. E.D. Ky. 1988); *In re Johnson*, 13 B.R. 185, 189 (Bankr. M.D. Tenn. 1981). It is impossible for us to ignore the clear statement of § 553 that "this title [the Bankruptcy Code] does not affect any right of a creditor to offset . . . ." We interpret this statement to allow a discharged debt to be setoff upon compliance with the terms and conditions provided in § 553, notwithstanding § 524(a)'s post-discharge bar. This interpretation avoids the "possible injustice in requiring a

15

creditor to file its claim for satisfaction in the bankruptcy court, while at the same time compelling the same creditor to pay in full its debt to the bankruptcy estate." *In re Davis*, 889 F.2d at 661 (quoting *In re Southern Indus. Banking Corp.*, 809 F.2d 329, 332 (6th Cir.1987)). Our interpretation also creates an equitable balance by preventing affirmative action to collect the discharged debt, while preserving the creditor's right to raise a discharged debt as a defense to a recovery action brought by the debtor. "In these circumstances, where the creditor's use of § 553 is defensive, the spirit of § 524(a)(2), 'to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts' is not violated." *In re Ford*, 35 B.R. at 280 (quoting S.Rep. No. 598, 95[th] Cong., 2d Sess. 80 (1978), U.S.C.C.A.N. 1978, 5866).

In order to establish a valid right to setoff under § 553, the IRS must prove: (1) a debt owed by the creditor to the debtor which arose prior to the commencement of the bankruptcy case; (2) a claim of the creditor against the debtor which arose prior to the commencement of the bankruptcy case; and (3) the debt and claim must be mutual obligations. *Braniff Airways, Inc. v. Exxon Co.*, 814 F. 2d 1030, 1035 (5th Cir. 1987). The second and third conditions are easily satisfied in the present case. First, Appellant owed the IRS $3,800 arising out of her 1993 tax year. Second, the debts involved are between the same parties standing in the same capacity, the requisite for mutuality.

The final condition is that the IRS' debt to Appellant arose prior to the commencement of the bankruptcy case. Creditors are

16

limited by the terms of § 553 to offsetting debts owed the debtor prepetition.[9]  *In re Eggemeyer*, 75 B.R. 20, 22 (Bankr. S.D. Ill. 1987) ("The discharge of a debt in a bankruptcy proceeding does not affect the creditor's right to setoff, provided the right of setoff existed at the time the bankruptcy petition was filed."). Whether a debt arises prepetition is governed by when the debt accrued, not when the action for recovery was brought.  "A tax obligation accrues when the event that triggers liability has occurred." *Matter of Midland Indus. Service Corp.*, 35 F.3d 164, 167 (5th Cir. 1994).  As of December 31, 1997 all of the events necessary to establish Appellant's tax liability for her 1997 tax year had occurred.[10]  The date she actually filed her return is not relevant in determining when the debt arose.[11]  *Id.* at 167 ("[A] tax claim is incurred on the date it accrues rather than the date it is assessed or becomes payable.").  Thus, her bankruptcy petition having been filed on May 19, 1998, the overpayment (the debt owed the debtor by the creditor) arose prior to the commencement of the case.

Practical considerations reinforce a rule governing setoff

---

[9] Any incentive for a creditor to garner assets of the debtor in anticipation of a pending bankruptcy is abated by the trustee's power to avoid such preferences under § 547.

[10] The reference to December 31 does not imply that tax liability or overpayments cannot be established on a pro rata basis throughout the year.  We need not consider that question in the present case.

[11] The right to setoff exists provided that the debt is owed at the time the petition is filed even though it was not due or liquidated.  *Braniff Airways*, 814 F.2d at 1035-36; COLLIER ON BANKRUPTCY, ¶ 553.03[1][d] at 553-16, [f] at 553-18 (15th ed. 1996).

17

against discharged debt that disregards the timing of the debtor's action in favor of when it accrued. A contrary conclusion would open the proverbial floodgates to all manner of deception.[12] Specifically with regard to taxes, allowing dischargeability to act as a bar would permit a debtor to shelter assets from his creditors by making substantial overpayments to the IRS during a given tax year. The debtor could withhold the filing of his tax return until after he had filed for bankruptcy and received a discharge. Post-discharge, the debtor could obtain his tax refund free from the claims of his creditors.[13] Such a result would not comport with the equitable nature of the Bankruptcy Code. Accordingly, we find the IRS' debt to Appellant as a result of her overpayment during the 1997 tax year arose prepetition. Having established a valid right of setoff under § 553, the IRS permissibly offset Appellant's overpayment against

---

[12] "If the court in [*In re Johnson*, 13 B.R. 185, 189 (Bankr. M.D. Tenn. 1981)] were correct in its interpretation of § 553, then a debtor could prevent a creditor from effecting a setoff by waiting to file suit on a prepetition transaction until after he had filed a petition for relief. We conclude that the proper interpretation of § 553 is that it allows the setoff of mutual debts both of which arose before bankruptcy, regardless of when suit thereon is instituted. This would, thus, allow a creditor to raise a discharged debt as a defense to an action brought by the debtor, regardless of when that action is instituted, if that action is based on a claim or cause of action which arose before bankruptcy." *In re Shaw Construction Corp.*, 17 B.R. at 748.

[13] In the present case, Appellant reopened her bankruptcy case and listed the overpayment as an asset. In cases where the debtor does not list the claim as an asset, yet later commences a proceeding based on that claim, she would likely be judicially estopped from prosecuting her action. *See In re Coastal Plains, Inc.*, 179 F.3d 197 (5th Cir. 1999).

18

her discharged 1993 tax liability.

After the IRS executed its setoff rights, Appellant moved to reopen her case and filed amended schedules exempting the 1997 tax overpayment.  Appellant's second claim is that by virtue of the exemption of her tax overpayment, the IRS is prohibited from exercising its right to setoff.  The commencement of the bankruptcy case creates a bankruptcy estate, which includes all "legal and equitable interests of the debtor."  11 U.S.C. § 541; *Owen v. Owen*, 500 U.S. 305, 308 (1991); *Martin v. United States*, 159 F.3d 932, 934 (5th Cir. 1998).  Bankruptcy Code section 522 then permits a debtor to exempt certain property of the bankruptcy estate.  11 U.S.C. § 522(b).  Property exempted under § 522 is removed from the estate for the benefit of the debtor.  Thus, it is axiomatic that property cannot be exempted unless it was first part of the estate:

> An exemption is an interest withdrawn from the estate (and hence from creditors) for the benefit of the debtor.
>
> ***
>
> Property that is properly exempted under § 522 is (with some exceptions) immunized against liability for prebankruptcy debts.  § 522(c).  No property can be exempted (and therefore immunized), however, unless it first falls *within* the bankruptcy estate.  Section 522(b) provides that the debtor may exempt certain property "from property of the estate"; obviously, then, an interest that is not possessed by the estate cannot be exempted.

*Owen*, 500 U.S. at 308 (emphasis in original).  A debtor's claim to a tax refund is property of the estate.  *Mueller v. Commissioner*, 496 F.2d 899, 903 (5th Cir. 1974).  However, under 26 U.S.C. § 6402(a) the debtor is generally only entitled to a

19

tax refund to the extent that her overpayment exceeds her unpaid tax liability. *In re Davis*, 889 F.2d at 661. In the present case, the estate had a tax liability totaling $3,800, while the 1997 overpayment totaled only $1,395.94. Section 6402(a) grants the IRS discretion whether to offset against a debtor's unpaid tax liability or to refund the overpayment to the taxpayer. The IRS elected to exercise that discretion to apply the overpayment to Appellant's past liability. Because the prior unpaid tax liability exceeded the amount of the overpayment, the debtor was not entitled to a refund and the tax refund did not become property of the estate. Absent an interest in the estate to the refund, it could not properly be exempted by the debtor under § 522.

## Conclusion

We reject the IRS' contention that the bankruptcy court lacked jurisdiction over this proceeding. Section 505(a)(1) vests the bankruptcy court with broad jurisdiction over tax matters of the estate and the debtor, including determinations with respect to the personal liability of the debtor. The IRS' alternative contention that the bankruptcy court should have abstained and permitted this action to be brought in the Tax Court or the district court is also rejected. The bankruptcy court did not abuse its discretion in not abstaining from a proceeding involving issues governed predominantly by bankruptcy law and implicating one of the Code's paramount objectives of providing the honest debtor with a fresh start. The bankruptcy

20

court erred, however, by preventing the IRS from enforcing its statutory right to setoff, established in § 6402(a) of the I.R.C. and preserved in § 553 of the Bankruptcy Code, against a tax overpayment that arose prior to the commencement of the case. Upon compliance with the terms of § 553, a creditor's right to setoff is not affected by the post-discharge bar on collection efforts in § 524(a)(2). Additionally, under our controlling caselaw, the estate did not have an interest in the tax overpayment which could be exempted by Appellant. The bankruptcy court erred in permitting Appellant to exempt property, pursuant to § 522, which had not entered the estate. Because we find Appellant could not exempt the overpayment under § 522, we leave open the question of whether § 522(c) immunizes exempt property from setoff. We AFFIRM the judgment of the district court.

EMILIO M. GARZA, Circuit Judge, dissenting:

In contrast to the majority, I would not reach the merits of Constance Luongo's claim for a refund. Instead, I would dismiss her action on the ground that, under 11 U.S.C. § 505(a)(2)(B), the bankruptcy court lacked jurisdiction over her refund claim. I find that the bankruptcy court's jurisdiction extends only to claims for refunds that benefit the estate. The majority rejects this contention with a cursory analysis of the statute—simply reciting the statutory text, but relying on legislative history pertaining only to tax *liability* claims. In dispensing with the assertion that § 505 bars the bankruptcy court's exercise of jurisdiction over this case, the majority overlooks the plain meaning of the statute and the legislative history regarding the bankruptcy court's jurisdiction over *refund* claims.

It is a cardinal rule of statutory interpretation that we begin our analysis by examining the statute's text. *See INS v. Phinpathya*, 464 U.S. 183, 189, 104 S. Ct. 584, 589, 78 L. Ed. 2d 401 (1984) ("This Court has noted on numerous occasions that in all cases involving statutory construction, our starting point must be the language employed by Congress, . . . and we assume that the legislative purpose is expressed by the ordinary meaning of the words used.") (quotations and citations omitted). Mere quotation of the statute does not satisfy this requirement; instead, we must give studied consideration to Congress's words.

Moreover, § 505 abrogates the government's sovereign immunity, requiring us to strictly construe it in favor of the sovereign. *See* 11 U.S.C. § 106 (expressly abrogating sovereign immunity where suits are brought pursuant to § 505); *Dept. of the Army v. Blue Fox*, 525 U.S. 255, 261, 119 S.Ct. 687, 691, 142 L. Ed. 2d 718 (1999) (statutes abrogating sovereign immunity are to be strictly construed).

Section 505(a)(1) is a grant of jurisdiction, providing that:

> *Except as provided in paragraph (2) of this subsection*, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(Emphasis added). I agree with the majority that the word "may" in § 505(a)(1) arms the bankruptcy court with the discretion to exercise the jurisdiction granted to it by § 505. This grant of jurisdiction is, however, limited. The prefatory phrase "[e]xcept as provided in paragraph (2) of this subsection" expressly limns this grant of discretionary jurisdiction to those cases that are not within the parameters established by paragraph (2). Even if (a)(1) did not contain this explicit exception, paragraph (2) begins by stating that the "court may not so determine" those cases set out in (2)(A) and (B). In its rules of construction, the Bankruptcy Code provides that "'may not' is

-23-

prohibitive, and not permissive," making clear that the bankruptcy court is prohibited from deciding cases in (2)(A) and (B). 11 U.S.C. § 102(4). Furthermore, our circuit has previously accepted that paragraph (2) limits the bankruptcy court's jurisdiction, requiring us to determine whether the case at hand falls within the circumstances set out by that paragraph. *See In re Armstrong*, 206 F.3d 465, 474 (5th Cir. 2000) (holding that the bankruptcy court lacked jurisdiction to consider a refund claim where the trustee failed to comply with § 505(a)(2)(B)); *Tex. Comptroller of Pub. Accounts v. Trans State Outdoor Adver. Co. (In re Trans State Outdoor Adver. Co.)*, 140 F.3d 618, 620 (5th Cir. 1998) (holding that if the chapter 11 debtor's tax liability claim fell within § 505(a)(2)(A), the bankruptcy court lacked jurisdiction to consider the claim); *Internal Rev. Serv. v. Teal (In re Teal)*, 16 F.3d 619, 622 (5th Cir. 1994) ("Simply stated § 505(a)(2)(A), a jurisdictional statute, is mandatory"). Consequently, the plain meaning of the text compels us to examine whether § 505(a)(2) deprives the bankruptcy court of jurisdiction.

Section 505(a)(2)(B) provides that:

the court may not so determine
        (B) any right of the estate to a refund, before
the earlier of—
                (i) 120 days after the trustee properly
                requests such refund from the governmental
                unit from which the refund is claimed; or
                (ii) a determination by such governmental unit of
such request.

-24-

Luongo claims that the IRS owes her a refund. Subparagraph (B) is the only provision in § 505 that addresses "refund" claims. Hence, subparagraph (B) must be the starting place for determining whether the bankruptcy court has jurisdiction over Luongo's claim. *See Constable Terminal Corp. v. City of Bayonne, N.J. (In re Constable Terminal Corp.)*, 222 B.R. 734, 737 (Bankr. D.N.J. 1998) *aff'd In re Constable Terminal Corp.*, 246 B.R. 181 (D.N.J. 2000) ("Clearly, when addressing whether a court may grant a debtor a tax refund, the court's decision of the issue must begin with the language of § 505(a)(2)(B)."); *see also Roberts v. Sullivan County (In re Penking Trust)*, 196 B.R. 389, 394 (Bankr. E.D. Tenn. 1996) (noting Congress's "distinctive treatment" of refund claims).

Subparagraph (B) establishes three conditions precedent to a bankruptcy court's jurisdiction over refund claims. First, refund claims must be properly requested from the relevant governmental unit. *See* 11 U.S.C. § 505(a)(2)(B)(i). In order to "properly request" a refund, a trustee must comply with the refund procedures set forth by the government from which it seeks a refund. *See In re Armstrong*, 206 F.3d at 472 ("A 'proper request' [for a refund] under the Internal Revenue Code requires compliance with [26 U.S.C.] §§ 7422 and 6511"); *Roberts*, 196 B.R. at 396 ("A 'proper' request under § 505(a)(2)(B) connotes correctness and dictates conformity with the pertinent taxing

authority's mechanism for seeking a refund."). Failure to do so deprives the bankruptcy court of jurisdiction. *See In re Armstrong*, 206 F.3d at 472 (finding that where the trustee failed to comply with Internal Revenue Code procedures for requesting a refund, the bankruptcy court lacked jurisdiction to hear the refund claim); *City of Perth Amboy v. Custom Distrib. Servs., Inc. (In re Custom Distrib. Servs., Inc.)*, 224 F.3d 235, 243-44 (3d Cir. 2000) (holding that where the chapter 11 debtor failed to comply with state procedural requirements, the bankruptcy court lacked jurisdiction to hear the refund claim). Second, the subparagraph sets out when in time the bankruptcy court may exercise jurisdiction over a refund claim. The bankruptcy court can act once the relevant governmental unit reaches a determination on the claim or after the passage of 120 days from the date on which the trustee made his request, whichever is earlier. Thus, these two preconditions operate as an exhaustion requirement, mandating that the trustee allow the governmental unit to receive and act on the refund claim, although it must act within 120 days, before the bankruptcy court can exercise jurisdiction over the refund claim.

Third, and most important for this case, the text and purpose of subparagraph (B) tell us what kind of refund claim the bankruptcy court has jurisdiction to consider when the first two conditions have been met: a refund claim brought for the benefit

-26-

of the estate.  Section 505(a)(2)(B) refers to the "right of the estate to a refund."  The estate encompasses the property outlined in 11 U.S.C. § 541, which will be used to pay the creditors.  *See* 5 Collier on Bankruptcy ¶ 541. 01 (15th ed. 1999).  "Congress is presumed to know the meaning of the words it uses, especially in highly complex and intricate statutory schemes." *United States v. Sotelo*, 436 U.S. 268, 286-87, 98 S. Ct. 1795, 1806, 56 L. Ed. 2d 275 (1978) (Rehnquist, J. dissenting); *cf. Molzof v. United States*, 502 U.S. 301, 307, 112 S. Ct. 711, 716, 116 L. Ed. 2d 731 (1992) ("'[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.'") (quoting *Morissette v. United States*, 342 U.S. 246, 263, 72 S. Ct. 240, 250, 96 L. Ed. 288 (1952)).  The Bankruptcy Code is such a statutory scheme, and the word "estate" does not include what Luongo seeks through her action—a refund solely for her own benefit.[14]  We must presume that in using the

---

[14]    In response to this contention, the majority asserts that the definition of the estate, as provided in § 541 undermines my construction of the words "right of the estate."  The majority notes that § 541 defines property of the estate broadly to include property that the debtor may later declare exempt. Based on this definition, the majority asserts that the estate has a right to the refund claim at issue here and that its construction of § 505 does not read "'the right

of the estate' out of the statute," as I later contend it does.  While the majority is correct that property that the debtor may later declare exempt is property of the estate, the majority's analysis fails to account for the impact of the exemption.  The Supreme Court defined an exemption as "an interest *withdrawn from the estate* (and hence from the creditors) for the benefit of the debtor." *Owen v. Owen*, 500 U.S 305, 308, 111 S.Ct. 1833, 1835, 114 L.Ed.2d 350 (1991) (emphasis added)*; see Wischan v. Adler*, 77 F.3d 875, 877 (5th Cir. 1997) ("Although the proceeds of the pre-petition personal injury causes are *initially* property of the estate, some states and the federal government have created exemptions for them") (emphasis added).  The exempt property leaves the estate and vests in the debtor.  *See Bell v. Bell (In re Bell)*, 225 F.3d 203, 216  (2d Cir. 2000) ("It is well-settled law that the effect of . . . exemption is to remove property from the estate and vest it in the debtor."); *Mayer v. Nguyen (In re Nguyen)*, 211 F.3d 105, 107 & 109 (4th Cir. 2000) (the operation of the exemption is to "exclude" the exempt property from the estate); *In re Gamble*, 168 F.3d 442, 443 (11th Cir. 1999) ("exempt property is not part of the bankruptcy estate"); *Seror v. Kahan (In re Kahan)*, 28 F.3d 79, 81 (9th Cir. 1994) ("The bankruptcy estate includes all of the debtor's interests in property at the commencement of the case, except property that the debtor elects to exempt."); *Abramowitz v. Palmer*, 999 F.2d 1274, 1276 (8th Cir. 1993) (holding that where trustee failed to object to exemption, the trustee was "precluded from including" the property in the debtor's bankruptcy estate); *In re Yonikus*, 996 F.2d 866, 870 (7th Cir. 1993) ("[a]fter an asset is property of the estate . . ., it can still past out of the estate (thus out of the reach of creditors) as a" § 522 exemption); *Taylor v. Freeland & Kronz*, 938 F.2d 420, 422 (3d Cir. 1991) ("[T]he property so exempted is no longer considered property of the bankruptcy estate."); *Sherk v. Tex. Bankers Life & Loan Ins. Co. (In re Sherk)*, 918 F.2d 1170, 1174 (5th Cir. 1990) *abrogated on other grounds by Taylor v. Freeland & Kronz*, 504 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) (exempt property "is no longer property of the estate"); Norton Bankruptcy Law and Practice 2d § 51:2 (2000) ("The debtor by acting affirmatively, may take the required action to set aside his or her exemptions.  The court may determine *what is appropriately exempted and what property remains in the estate*.") (emphasis added)*; see also Graziadeai v. Graziadei (In re Graziadei)*, 32 F.3d 1408, 1410 n.2 (9th Cir. 1994) (bankruptcy court lacked jurisdiction over homestead property because it was exempt and therefore had no conceivable effect on the estate).  *But see Traina v. Sewell (In re Sewell)*, 180 F.3d 707, 710 (5th Cir. 1999) (contrasting excluded property with exempt property and noting that exempt property is "included in the bankruptcy estate but 'exempted from use in satisfying claims of creditors and other authorized charges.'").  Even the majority

phrase "right of the estate," Congress intended for this to be the only type of refund claim encompassed by § 505(a)(2)(B).

The modification of refund with "the right of the estate" also contrasts sharply with § 505(a)(1)'s "any tax, any fine . . . , or any addition to a tax" language. This difference illustrates that had Congress intended to refer to refund claims generally, it could have done so. *See also Hartford Underwriters Ins. v. Union Planters Bank, N.A.*, 530 U.S. 1, 7, 120 S. Ct. 1942, 1947-1948, 147 L. Ed. 2d 1 (2000) (in interpreting 11 U.S.C. § 506, finding that "had Congress intended the provision to be broadly worded, it could simply have said so, as it did . . . in other section of the Code."). This difference in language also accounts for the fact that the debtor can bring a claim for a determination of his tax liabilities, but cannot bring a refund claim that inures only to his benefit. Further, if we were to adopt the majority's position we would read the words "right of the estate" out of the statute, a result eschewed in statutory interpretation. *See* 2A Sutherland Statutory Construction § 46.06 (5th ed. 1992) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous.")

Additionally, in setting forth who requests the refund

_____

acknowledges that "exempted property is removed from the estate." Thus, "the right of the estate" is properly construed as not including exempt property.

-29-

claim, the statute refers only to the trustee. *See* 11 U.S.C. §
505(a)(2)(B). Congress's failure to require that the debtor make
such a request cannot be seen merely as an omission because, as
the Supreme Court noted in construing § 506 of the Code, "the
fact that the sole party named -- the trustee -- has a unique
role in bankruptcy proceedings makes it entirely plausible that
Congress would provide a power to him and not others." *Hartford
Underwriters Ins.*, 530 U.S. at 7, 120 S. Ct. at 1947. So too it
is entirely plausible here that Congress entrusted this
responsibility only to the trustee.[15] Moreover, giving this
responsibility to the trustee implies the refund claim will be
one benefitting the estate because the trustee's duty is to act
for the benefit of the estate, i.e., for the benefit of the
creditors.[16] As a result, the text's delegation solely to the

---

[15] Note, however, that the term trustee encompasses a debtor in
possession. Federal Rule of Bankruptcy Procedure 9001.01(10) provides
that "[t]rustee includes a debtor in possession in a chapter 11 case."
Under 11 U.S.C. § 1107, with certain exceptions "a debtor in possession
shall have all the rights, . . . and powers, and shall perform all the
functions and duties, . . . of a trustee in a case under" chapter 11.
Here, Luongo is a chapter 7 debtor and a trustee has been appointed for
the estate.

[16] The majority's response to my interpretation of §
505(a)(2)(B) fails to account for the delegation of the duty to properly
request the refund to the trustee, instead treating the analysis as if
its only support rested in the words "right of the estate." It is not
simply because the words "right of the estate" appear that § 505 is so
limited, but also because the duty to request the refund is delegated
to the trustee. The trustee's duty is to maximize the estate for the
purposes of distribution to the creditors. *See* 6 Collier on Bankruptcy
¶ 704.02[3] (15th ed. 2000) ("[I]t is the trustee's duty to both the
debtor and the trustee to realize from the estate all that is possible

trustee the duty to properly request the refund claim considered in tandem with the statute's reference only to "the right of the estate to a refund" demonstrates that § 505(a)(2)(B) concerns only a refund that benefits the estate.

The purpose of § 505(a)(2)(B), as expressed in its text, demonstrates that the text's singular focus on a refund that benefits the estate limits the bankruptcy court's jurisdiction over refund claims to those claims benefitting the estate that have been properly requested and the tax authority has been permitted 120 days to act upon that request. As described above, the first two conditions precedent form an exhaustion

---

*for distribution among the creditors*.") (emphasis added). In chapter 7 proceedings, the trustee's main duty is to liquidate the estate as expeditiously as possible. *See* 11 U.S.C. § 704(1) (trustee is to "collect and reduce to money the property of the estate"). Further, with respect to exemptions, the Code grants the right of exemption to the debtor, not the trustee. *See* 11 U.S.C. § 522. The trustee, as a party in interest, has standing to object to the debtor's exemptions, and should object where the exemption is invalid and would deplete the value of the estate available for distribution to the creditors. Once the period for objections to the debtor's proposed exemptions passes and the property becomes exempt, the trustee has no interest in exempt property except to the extent that the property's value exceeds any applicable caps on the debtor's exemption, in which case both the estate and the debtor have an interest in the property. *See* 11 U.S.C. § 522(*l*) (property declared exempt on the debtor's schedules becomes exempt if there are no objections); Bankr. R. Proc. 4003 (providing thirty days in which to object). The Code recognizes that the trustee's and the debtor's interests diverge regarding exemptions by allowing the debtor to exempt property the trustee recovers, and, more importantly, by permitting the debtor to avoid transfers the trustee can avoid in the event the trustee fails to act. *See* 11 U.S.C. § 522(g) and (h). Thus, the delegation to the trustee the duty to properly request the refund claim is especially significant given the trustee's and the debtor's roles with respect to exemptions.

requirement.  This requirement compels the trustee to first avail himself of the refund procedures provided by the government from which he seeks a refund and allows the government to act first with respect to that claim, rather than being subjected automatically to the bankruptcy court's jurisdiction.  *See Roberts*, 196 B.R. at 392 ("The purpose of § 505(a)(2)(B) is to afford the taxing authority a reasonable opportunity to review any refund claim under its normal procedures."); *St. John's Nursing Home, Inc. v. City of New Bedford (In re St. John's Nursing Home)*, 169 B.R. 795, 800 (D. Mass. 1994) ("Section 505(a)(2)(B) is thus designed to 'give the taxing authorities time to act on a refund request.'") (quoting Benjamin Weintraub and Alan N. Resnick, *Bankruptcy Law Manual*, ¶ 5.09 (3d ed. 1992)).  Imposing such a requirement on refunds as opposed to tax liabilities is particularly important from the government's perspective.  When a debtor or a trustee seeks a determination of tax liabilities, he is asking the bankruptcy court to fix what he owes to the government.  Where this occurs, the government may receive payment.  More importantly, it will not be making a payment to the debtor or the estate.  In contrast, when a trustee calls upon the bankruptcy court to resolve the estate's refund claim, the trustee anticipates the receipt of a payment from the government.  At the resolution of such a claim, the government, be it federal or local, may have to make a payment when the money

-32-

it has received from the debtor may have already left its coffers. *See City of Perth Amboy*, 224 F.3d at 243 ("[§ 505(a)(2)(B)(i)] is also a recognition of the havoc that would be visited on the financial stability of a municipality if it were forced to refund taxes paid years before"). If § 505(a)(2)(B) applied solely to the right of the estate to a refund, the debtor seeking a refund claim for her own benefit could go directly to the bankruptcy court without allowing the government the opportunity to examine the claim. Section 505(a)(2)(B)'s purpose offers no basis for allowing one refund claim to escape the government's procedures but not the other. *Cf. In re Dunhill Med., Inc.*, No. 92-37700, 1996 WL 354696 at *5 (Bankr. D.N.J. Mar. 27, 1996) ("A debtor should not be permitted to bypass" §505(a)(2)(B)'s requirements "simply by classifying a claim as a 'credit' because the practical result of a credit is identical to that of a refund."). Such a result frustrates the statute's exhaustion purpose. Thus, that the text concerns only the estate's right to a refund cannot be construed to mean that Luongo's claim simply falls outside the reach of § 505(a)(2)(B) and within the bankruptcy court's jurisdiction.[17] In light of

---

[17] In quickly dispensing with the possible jurisdictional bar posed by § 505, the majority fails to note in the text of its opinion whether Luongo complied with § 505(a)(2)(B)'s requirements that a refund be properly requested and that the bankruptcy court wait for the government's determination or 120 days after such a request to act (whichever may have occurred earlier). Thus, the majority implies that a debtor's refund claim that benefits only the debtor is not bound by

this purpose and the text's focus on the estate's refund claims, the bankruptcy court's jurisdiction must then be limited to refund claims brought for the benefit of the estate.[18]

Implicit in the majority's contention that this reading of § 505(a)(2)(B) is too constrained is the assumption that Congress could not have intended to so limit § 505(a)(1)'s broad grant of jurisdiction. The interaction between § 505(a)(1) and § 505(a)(2)(A) demonstrates otherwise. Section 505(a)(2)(B) provides that the court may not determine:

> the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction

these conditions. As described in text, the purpose of subparagraph (B) does not permit such a distinction.

In response to my dissent, the majority states in a footnote that Luongo has complied with the requirements of § 505(a)(2)(B). Hence, despite the implication of the majority's initial discussion of § 505, the majority seems to interpret § 505(a)(2)(B) as applying to Luongo's claim. This interpretation is incorrect because it cannot overcome the text's focus on "the right of estate" together with the delegation to the trustee the responsibility for seeking a refund claim.

[18]     The majority responds that other courts confronted with a debtor's refund claim inuring only to the benefit of the debtor have not adopted the interpretation of § 505 I have set forth. In support of this contention, the majority points to *United States v. Ryan (In re Ryan)*, 64 F.3d 1516 (11th Cir. 1995) and *Gribben v. United States (In re Gribben)*, 158 B.R. 920 (S.D.N.Y. 1993). In *In re Gribben*, the court did not even broach the question of § 505's applicability to the case, let alone offer an interpretation of that section. Although the court in *In re Ryan* at least discussed § 505, it merely recited the statutory text and from there concluded, without discussion, that the debtor need only meet § 505's exhaustion requirements in order for the bankruptcy court to have jurisdiction. *See* 64 F.3d at 1520-1521. Given the nonexistent or truncated analysis found in these two cases, I find them unpersuasive.

before the commencement of the case under this title
This exception recites the language of the last clause of
paragraph (1) adding only the timing provision, i.e., "before the
commencement of the case under this title."   Subparagraph (A)
thus precludes the bankruptcy court from determining any tax
liabilities contested and adjudicated pre-petition, cutting a
broad swath from the general grant of jurisdiction and leaving
only those claims contested subsequent to the beginning of the
bankruptcy case to fall within the scope of the bankruptcy
court's jurisdiction.   Given the substantial limitation
subparagraph (A) places on the bankruptcy court's jurisdiction,
the assumption that Congress did not intend to so limit the
bankruptcy court's jurisdiction cannot be made.

Moreover, the majority contends that the above
interpretation of § 505(a)(2)(B) contravenes Congress's intent to
provided a broad grant of jurisdiction over "tax issues" as
evinced in the legislative history.   In examining the legislative
history, the majority focuses solely on the legislative
statements pertaining to taxes owed by the debtor or the estate.
Specifically, the majority relies on two statements by
Representative Edwards and Senator DeConcini.   First, the
majority relies on Representative Edwards's statement that § 505
authorizes "the bankruptcy court to rule on the merits of any tax
claim involving an unpaid tax, fine, or penalty relating to the

-35-

tax or an addition to a tax, of the debtor or the estate."  124 Cong. Rec. 32413; *see* 124 Cong. Rec. 34013 (1978) (Statement of Sen. DeConcini).  Additionally, the majority points to Representative Edwards's and Senator DeConcini's statement that "the bankruptcy judge will have authority to determine which court will determine the merits of the tax claim both as to the claim against the estate and claims against the debtor concerning his personal liability for nondischargeable taxes."  124 Cong. Rec. 32414 (1978) (statement of Sen. DeConcini); 124 Cong. Rec. 34014 (1978) (statement of Rep. Edwards).  In these statements, the majority zeroes in on the phrases "of the debtor or the estate" and on "claims against the debtor concerning his liability for nondischargeable taxes" in order to show that Congress intended for the bankruptcy court to have jurisdiction over refund claims not affecting the estate.  But these statements concern one kind of claim:  one in which the debtor owes money to the government.  The first quotation refers to "unpaid tax, fine, or penalty relating to a tax, addition to a tax."  All of these items connote the taxing authority's right to a payment.  Likewise, the second statement's reference to "claims against the debtor" connotes the government's right to a payment from the debtor.  As such, these statements offer little insight into Congress's intent with respect to refund claims.

Representative Edwards's and Senator DeConcini's subsequent

remarks clarify that § 505(a)(1)'s grant of jurisdiction is subject to paragraph (2)'s limitations.  The Legislators note that the bankruptcy court "will not have jurisdiction to rule on the merits of any tax claim which has been previously adjudicated, in a contested proceeding, before a court of competent jurisdiction," recognizing the exception to jurisdiction § 505(a)(2)(A) creates.  More importantly, although conspicuously absent from the majority's recitation of the legislative history, the Legislators addressed refund claims, stating:

> the bankruptcy court can, *under certain conditions*, determine the amount of tax *refund claim by the trustee*. . . .  [I]f the refund results from an offset or counterclaim to a claim or request for payment by the Internal Revenue Service, or other tax authority, the trustee wold not first have to file an administrative claim for refund with the tax authority.
>     However, *if the trustees requests a refund* in other situations, he would first have to submit an administrative claim for the refund. . . .  [I]f the Internal Revenue Service or other tax authority does not rule on the refund claim within 120 days, then the bankruptcy court may rule on the merits of the refund claim.

124 Cong. Rec. 34013 (1978) (Statement of Sen. DeConcini); 124 Cong. Rec. 32413 (1978) (Statement of Rep. Edwards) (emphasis added).  The statement refers only to refund claims brought by the trustee and is devoid of any reference to the debtor.  In contrast, the legislative history of § 505 is replete with references to the debtor where it discusses his debts.  *See, e.g.*, 124 Cong. Rec. 34013 (1978) (Statement of Sen. DeConcini)

-37-

("[A]n individual debtor can also file a complaint to determine dischargeability . . . so that the bankruptcy court would then determine the validity of the *claim against* the assets in the estate and also *the personal liability* of the debtor for any nondischargeable *debt*.") (emphasis added); 124 Cong. Rec. 32414 (1978) (Statement of Rep. Edwards) (summing up the interplay between the automatic stay provision and § 505's grant of jurisdiction stating that "[i]n essence, . . . the bankruptcy judge will have authority to determine which court will determine the merits of the tax claim both as to *claims against* the estate and *claims against* the debtor concerning his personal liability for nondischargeable taxes.") (emphasis added). This juxtaposition between the discussion of refunds and the remainder of § 505 again implies that these refund claims are claims benefitting the estate, not the debtor personally. Furthermore, the legislators noted that the bankruptcy court can exercise jurisdiction over refund claims by the trustee only under "certain circumstances," evincing congressional intent to limit the bankruptcy court's jurisdiction over refund claims. Thus, the legislative history shows that Congress granted the bankruptcy courts only a limited role in adjudicating refund claims.

In short, the plain language and the legislative history demonstrate that the bankruptcy court has jurisdiction only to

hear refund claims that benefit the estate and the government's immunity has not been abrogated for the purposes of this suit. That § 505 does not provide the bankruptcy court with jurisdiction cannot be overcome, as Luongo suggested at oral argument, by § 106's abrogation of immunity for actions brought under §§ 522, 542, 543, or 362. None of these sections concerns refunds. Because § 505 is an abrogation of sovereign immunity specifically with respect to refunds, its grant of jurisdiction and the limitations on that jurisdiction control. *See In re Armstrong*, 206 F.3d at 470 ("One basic principle of statutory construction is that where two statutes appear to conflict, the statute addressing the relevant matter in more specific terms governs."). Consequently, Luongo's contention does not defeat the conclusion to which the plain language of § 505 and its legislative history lead.

Finally, even if the majority's view is correct and the bankruptcy court can exercise jurisdiction over Luongo's refund claim, the bankruptcy court's abstention is warranted. The text of § 505(a)(2)(B) plainly focuses on the right of the estate to a refund claim. Should the estate receive such a payment, it will benefit the creditors, making them the intended beneficiaries of § 505(a)(2)(B). While I agree with the majority that one of the broad purposes of the bankruptcy code is to provide debtors with a fresh start, I disagree that this broader purpose should trump

§ 505(a)(2)(B)'s more narrow purpose.  Accordingly, even if the bankruptcy court had jurisdiction, I would find that abstention was warranted.

For the foregoing reasons, I would dismiss for lack of jurisdiction.